1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLUMBIA
2
    * * * * * * * * * * * * * * *    )
3   UNITED STATES OF AMERICA,        )       Criminal Action
                                     )        No. 22-00263
4                   Plaintiff,       )
                                     )
5       vs.                          )
                                     )
6   ZACHARY FRIEDMAN,                )       Washington, D.C.
                                     )       August 25, 2022
7                   Defendant.       )       10:08 a.m.
                                     )
8   * * * * * * * * * * * * * * *    )

9

10        TRANSCRIPT OF ARRAIGNMENT AND CHANGE OF PLEA
                     CONDUCTED VIA ZOOM
11      BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,
                UNITED STATES DISTRICT JUDGE
12

13

    APPEARANCES:
14
    FOR THE GOVERNMENT:       EZRA SPIRO, ESQ.
15                            NANETTE DAVIS, ESQ.
                              U.S. DEPARTMENT OF JUSTICE
16                            TAX DIVISION
                              150 M Street, Northeast
17                            Washington, D.C. 20002

18                            LESLIE A. GOEMAAT, ESQ.
                              UNITED STATES ATTORNEY'S OFFICE
19                              FOR THE DISTRICT OF COLUMBIA
                              555 Fourth Street, Northwest
20                            Eleventh Floor
                              Washington, D.C. 20530
21

22  FOR THE DEFENDANT:        JEREMY H. TEMKIN, ESQ.
                              MORVILLO, ABRAMOWITZ, GRAND,
23                              IASON & ANELLO, P.C.
                              565 Fifth Avenue
24                            Eleventh Floor
                              New York, New York 10017
25

1    FOR PRETRIAL SERVICES:   SHAY HOLMAN

2

     REPORTED BY:              LISA EDWARDS, RDR, CRR
3                              Official Court Reporter
                               United States District Court for the
4                                District of Columbia
                               333 Constitution Avenue, Northwest
5                              Room 6706
                               Washington, D.C. 20001
6                              (202) 354-3269

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Criminal Case 22-263, the

2     United States of America versus Zachary Friedman.

3          Counsel, would you please identify yourself for

4     the record, starting with the Government.

5          MR. SPIRO:  Good morning, your Honor.  Ezra Spiro,

6     Nanette Davis and Leslie Goemaat on behalf of the United

7     States.  Appearing with us are Special Agent Adam Soline

8     from IRS Criminal Investigations and Special Agent Tom

9     Browning of the Special Inspector General for Afghanistan

10    Reconstruction.

11         THE COURT:  Good morning, everyone.

12         MS. GOEMAAT:  Good morning, your Honor.

13         MS. DAVIS:  Good morning, your Honor.

14         MR. TEMKIN:  Your Honor, Jeremy Temkin, Morvillo,

15    Abramowitz, Grand, Iason & Anello, for Mr. Friedman.  And

16    with me in a conference room in New York is Mr. Friedman.

17         THE COURT:  Good morning, everyone.

18         MR. TEMKIN:  Good morning, your Honor.

19         THE COURT:  We're here for a plea.

20         So, Mr. Friedman, are you ready?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  What I have is -- I want to make

23    sure -- I have the statement of offense, one which has in

24    essence anonymized certain names or companies; and then I

25    do.  Have one that's an unredacted version, and I thank you

1    for that.

2           I will do the one that's redacted or anonymized.

3    I'll work from that one since we're on the public record.

4    But I always require an unredacted one to make sure we're

5    all talking about the same either individuals or companies.

6    And I do have the plea letter, which is dated July 25th of

7    this year.

8           I'm assuming there are no changes.  Is that

9    accurate from the Government's perspective?

10          MR. SPIRO:  Yes, your Honor.

11          THE COURT:  Let me start with Mr. Friedman.  Are

12   you willing to proceed by video as opposed to in person for

13   this plea?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  The CARES Act still applies in the

16   courthouse through November 9th.  So even though it's a

17   felony, we can proceed by Zoom.

18          I believe he has not been arraigned on the

19   information.  Is that correct?

20          MR. TEMKIN:  That is correct, your Honor.

21          THE COURT:  So, Dorothy, we do need to have him

22   arraigned.

23          THE COURTROOM DEPUTY:  (No audible response.)

24          THE COURT:  You're muted.

25          If I could ask counsel, does Mr. Friedman have a

1    copy of the information?

2              MR. TEMKIN:  Your Honor, we have received a copy

3    of the information.  I've reviewed it with Mr. Friedman.  We

4    waive a public reading and request that a not guilty plea be

5    entered on his behalf pending the change of plea proceeding.

6              THE COURT:  I still think she needs to say

7    something, but it does cover most of it.

8              Does he also have the other documents in front of

9    him, just so that --

10             MR. TEMKIN:  Yes.  We have them.

11             THE COURT:  So when we refer to them, it's easier.

12             MR. TEMKIN:  We have the plea agreement dated July

13   25; we have the statement of offense, both versions.  Your

14   Honor, we also have a waiver of indictment that Mr. Friedman

15   signed previously and I think your Honor has it.  And also,

16   we have a waiver of trial by jury --

17             THE COURT:  Yes.

18             MR. TEMKIN:  -- which Mr. Friedman and I have also

19   signed.

20             THE COURT:  I also noticed that the Government

21   provided a booking order.  We can discuss that at the end.

22             Dorothy, do you have the information to at least

23   tell him what the charge is?

24             THE COURTROOM DEPUTY:  Yes.

25             May the record reflect that the Defendant has

1    received a copy of the indictment.

2             Does the Defendant waive formal --

3             THE COURT:  Information.

4             THE COURTROOM DEPUTY:  Information.

5             Does the Defendant waive formal reading of the

6    information?

7             THE DEFENDANT:  Yes, I do.

8             THE COURTROOM DEPUTY:  In Criminal Case 22-263, in

9    which you are charged in Count 1 with tax evasion, how does

10   the Defendant wish to plead?

11            THE DEFENDANT:  Not guilty.

12            THE COURT:  So let me swear you in and then we'll

13   proceed.

14            (Whereupon, the Defendant was duly sworn.)

15            THE COURT:  Mr. Friedman, I'm going to be asking

16   you some questions.  I need to make a finding at the end

17   that you're entering this plea knowingly and voluntarily.

18   As I go through this, if you wish to consult with your

19   lawyer, you can.  Just let us know that you're doing it and

20   that you want to do it.

21            If I explain things differently than what you

22   understood, please ask for clarification.  Don't just give

23   an answer that you think I want to hear.  I may explain

24   things differently or present them in a different way, and I

25   want to make sure that we've all agreed to the same thing.

1     All right?

2            Also, I want to make sure this is really what you

3     want to do.  You can't come back in two weeks and say, Well,

4     your Honor, I have changed my mind.  So I want to make sure

5     that this is your decision.

6            Also, we need to put on the record either in

7     writing or orally during this hearing anything that you

8     think is part of this agreement.  Again, you can't come back

9     later and say, I thought this or that was part of it.  So we

10    need to make sure it's either in writing or it's been

11    brought up today.

12           So in terms of just -- I'm going to set out very

13    briefly what the plea is to without getting into the plea

14    letter at this point.

15           I then have some background questions that I will

16    be asking you.  I'll go over your constitutional rights and

17    ask if you understand them and at the end if you're willing

18    to give them up.

19           The factual proffer, the Government will -- and I

20    think the easiest thing, frankly, is to read the statement

21    of offense -- it's fairly short -- instead of summarizing

22    it.  I need to make a finding that the proffer meets the

23    elements of the offense that you're pleading guilty to.

24           I will also ask you, though you have signed the

25    statement of offense, whether you agree with it.  And I'll

1    go through it to make sure that you also -- that the conduct

2    meets the elements of the offense in order to find you

3    guilty.  I need to make a finding that there's evidence

4    beyond a reasonable doubt that the Government has the

5    evidence and you have admitted the conduct that meets those

6    elements in order for me to find you guilty.

7            I will go over the plea letter.  I'm not going to

8    go through every single thing.  It's got a fair amount of

9    information in it.  The fact that I don't go through every

10   single paragraph doesn't mean it's not important.  I will go

11   through portions of it that I'm required to do as part of

12   the inquiry such as the consequences, sentencing, et cetera,

13   and then areas that I know sometimes can create issues or

14   are unusual or I want to make sure that you understand what

15   it is that you're actually agreeing to, particularly if

16   you're giving up certain rights.  So I'll go over that.

17           But if there's something that either you or your

18   counsel think needs to be brought up specifically, certainly

19   please do so to make sure there's no misunderstanding.

20           And then I have some questions at the end that

21   will go to the voluntariness of the plea.  So that just

22   gives you the framework of what we'll be discussing.

23           So you've just been placed under oath.  And if you

24   don't answer my questions truthfully, I want you to

25   understand that you could be prosecuted for perjury or for

1    making a false statement.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  So you've been charged in an

5    information with Count 1, tax evasion, with tax years 2013

6    through 2015, in violation of 26 USC Section 7201.  And that

7    is actually what you're pleading to.

8              The Government has agreed that no other charges

9    will be filed against you relating to the subject matter in

10   the statement of offense in the tax years.

11             You have agreed to restitution in the amount of

12   $207,106.

13             The Government has agreed that you can be in the

14   community.  You've got gone through pretrial services, and I

15   just saw the report.  But they're not requesting that you be

16   detained.  So at the end, the Court will make that decision;

17   and if I'm going to release you, I will be indicating what

18   conditions you would need to follow while you're in the

19   community.  And pretrial has recommended that you remain in

20   the community.

21             In terms of allocution, which is recommendations

22   at the time of sentencing, the Government has reserved them.

23   There's discussions in the plea letter about certain

24   agreements that your counsel and the Government have

25   reached, which I'll go over.  But they're not going to be

1    silent.  So I will hear at sentencing from the Government,

2    from your counsel and from yourself, should you choose to do

3    so.

4              Is that the basic agreement as you understand it?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Let me ask a couple of background

7    questions.

8              How old are you, sir?

9              THE DEFENDANT:  I'm 44 years old, your Honor.

10             THE COURT:  And what's your date of birth?

11             THE DEFENDANT:  April 10, 1978.

12             THE COURT:  I missed the year.

13             THE DEFENDANT:  1978.

14             THE COURT:  Thank you.

15             How far have you gone in school?  What is the

16   highest level of education that you have?

17             THE DEFENDANT:  Juris doctor, law degree.

18             THE COURT:  Have you practiced?

19             THE DEFENDANT:  No, your Honor.  I have not

20   practiced beyond being a summer associate.

21             THE COURT:  Where were you born?

22             THE DEFENDANT:  I was born in Los Angeles,

23   California.

24             THE COURT:  Have you taken any kind of alcohol or

25   drugs or medication in the last 48 hours?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  What was the process that you went

3    through with counsel in terms of reviewing the plea letter,

4    the statement of offense and the case?

5          THE DEFENDANT:  My counsel reviewed the letter and

6    the statement with me in full.

7          THE COURT:  So have you read it as well as

8    discussing it with him?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Have you ever received any treatment

11    for any type of mental illness or emotional disturbance?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  I understand you have a copy of the

14    information or it has been provided to you with the pending

15    charge.  Have you fully discussed that charge with your

16    counsel?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Are you completely satisfied with the

19    services of your attorneys in this case?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Have you had enough time to discuss

22    the matter with your attorneys, discuss the case, the plea

23    offer and whether or not you should accept it or go to

24    trial?

25          THE DEFENDANT:  Yes, your Honor.

1      THE COURT:  Let me go through your constitutional

2   rights.  I'm going to ask if you understand them and then

3   I'll ask at the end whether you're willing to give them up

4   or waive them.

5      You're pleading to a felony information, which

6   means that it hasn't been indicted.  So that means that

7   there has not been a grand jury consideration of the charges

8   and a grand jury indictment.

9      So I want to make sure you understand you have a

10   right to a grand jury indictment, which would mean that the

11   Government would have to convince 12 grand jurors out of at

12   least 16, but no more than 23, that there's probable cause

13   that this crime was committed and that you are the person

14   that actually committed it.

15      Do you understand your right to a grand jury?

16      THE DEFENDANT:  Yes, your Honor.

17      THE COURT:  And I understand you're willing to

18   give up that right.  Is that correct?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  You have a right to plead not guilty

21   and have a jury trial in this case.  What would happen is,

22   citizens from the District of Columbia would be brought to

23   the courtroom.  Questions would be asked by you through

24   counsel, the Government and the Court in order to ensure

25   that the jury would be fair and impartial to both sides and

1    would also be making a decision based on the evidence

2    presented in the courtroom and applying the jury

3    instructions that the Court would provide.

4         So there would be 12 citizens from D.C. who would

5    determine your guilt or innocence based on the evidence in

6    the courtroom, presented in the courtroom.

7         Do you understand your right to a jury trial?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Do you understand that if you did have

10   a trial, you would have a right to be represented by a

11   lawyer at the trial and if you could not afford one, one

12   could be appointed for you?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  Do you understand that?

15        THE DEFENDANT:  Yes, your Honor.

16        THE COURT:  All of this is making sure you

17   understand what you're giving up.

18        Do you understand that if you went to trial, you

19   would have the right through your attorney to confront and

20   cross-examine any witnesses against you?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Do you understand that you would have

23   the right to present your own witnesses and you would have a

24   right to subpoena them; in other words, to require them to

25   come and testify in your defense?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that if you went

3    forward to trial, you would have the right to testify and

4    present evidence on your own behalf if you wanted to, but

5    that you would not have to testify or present any evidence

6    if you did not want to?  And that's because you cannot be

7    forced to incriminate yourself; that is, to present any

8    evidence of your own guilt.

9          And, if requested, what I would indicate to the

10   jury is that your decision to assert your constitutional

11   right cannot be held against you nor can they infer any

12   guilt from that decision.

13         Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand that unless and

16   until I accept your guilty plea, you are presumed by the law

17   to be innocent, because it's the Government's burden to

18   prove your guilt beyond a reasonable doubt?  And until it

19   does, you cannot be convicted at trial.  Do you understand

20   that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you understand that if you went

23   forward to trial and were convicted, you would have a right

24   to appeal your convictions to the Court of Appeals, a higher

25   court?  There would be three judges.  And again, you would

1    have a right to have a lawyer help you prepare your appeal.

2    And if you couldn't afford one, one would be appointed for

3    you.

4           Do you understand that?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Do you understand that by pleading

7    guilty, you're giving up your rights to appeal?  And let me

8    go through them very carefully.

9           I would ask that you pull out the sheet of paper,

10    and if you would look to Page 8 at the bottom.  If you could

11    read along, instead of my trying to summarize, I will

12    explain your rights.

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Do you have it in front of you?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  So you're agreeing to waive -- "waive"

17    means give up -- insofar as such waiver is permitted by law

18    the right to appeal the conviction in this case on any

19    basis, including, but not limited to, claims that, one, the

20    statute to which you are pleading guilty is

21    unconstitutional; and, two, the admitted conduct doesn't

22    fall within the scope of the statute.

23           Now, the language "insofar as such waiver is

24    permitted by law" means, in other words, you're giving up

25    your right to appeal your conviction, including claiming

1    that the statute to which you have been found guilty is

2    unconstitutional, which means you cannot be found guilty, or

3    that the conduct that you're going to be admitting to

4    doesn't fall within the statute, so if it's not criminal you

5    couldn't be convicted.  So you're giving up your right to

6    appeal.

7              But if on appeal another case comes along which --

8    in which the Court of Appeals finds that the statute's

9    unconstitutional or conduct similar to yours does not fall

10   within the statute, then you can appeal.  So you can benefit

11   from the Court of Appeals' opinion that would be favorable

12   to you.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  And have you discussed that with your

16   counsel?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And moving along, reading on:  You

19   understand that federal law, which specifies the statute,

20   affords you the right to appeal your sentences -- now, this

21   is sentences in certain circumstances -- and you're agreeing

22   to waive -- again, give up -- the right to appeal the

23   sentence in this case, including, but not limited to, any

24   term of imprisonment, fine, forfeiture, award of

25   restitution, term or condition of supervised release,

1    authority of the Court to set conditions of release and the

2    manner in which the sentence was determined.

3              There are exceptions:  except to the extent that I

4    sentence you above the statutory maximum, which would be an

5    unlawful sentence, or if I sentence you above the guideline

6    range, which would not necessarily be an unlawful sentence.

7    But under those circumstances, you could appeal the

8    sentence.

9              Also, notwithstanding that agreement, you do not

10   give up the right to appeal either the conviction and

11   sentence on the basis of ineffective -- a claim of

12   ineffective assistance of counsel.  So on that claim, you

13   would be able to appeal without these other additional

14   strictures, but not to raise on appeal other issues

15   regarding the conviction or sentence.

16             So is that your understanding of the agreement?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And have you discussed that with your

19   counsel?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  And with few exceptions, any notice of

22   appeal would have to be filed within 14 days of judgment

23   being entered in your case.

24             Now, obviously, if -- on the proviso that at some

25   later point the Court of Appeals found the statute

1    unconstitutional or the conduct unlawful, obviously, you

2    could appeal at that point.  But in terms of other -- the

3    narrow bases for appeal, they generally would have to be

4    done within 14 days.

5                Do you understand and agree?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  And again, if you are unable to pay

8    the cost of an appeal, you can apply to have it filed

9    without cost to you.  Again, you could have counsel

10   appointed if you could not afford one.

11               Do you understand and agree?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  Do you understand if you plead guilty

14   in this case and I accept your guilty plea, you'll be giving

15   up the rights I've just explained to you because there's not

16   going to be a trial and there won't be any appeal other than

17   on this very narrow grounds that I've stated?  Do you

18   understand that?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  Do you want to plead guilty in this

21   case, give up your rights to a trial, the right to an appeal

22   with the understanding that I've set out?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  So at this point, what I'm going to do

25   is ask the Government to state the evidence that would have

1    been presented if the case had gone to trial.

2              My suggestion is that you just read the statement

3    of offense -- it's a short one -- instead of trying to do

4    it.

5              MR. SPIRO:  Yes, your Honor.

6              THE COURT:  I will ask the Defendant,

7    Mr. Friedman, whether he agrees.

8              Counsel?

9              MR. TEMKIN:  Your Honor, there's one other aspect

10   of waiver that I'm not sure what -- whether your Honor is

11   going to cover it.  But Mr. Friedman resides in New York.

12   And so he has agreed to waive venue and agreed to enter this

13   plea in the District of Columbia.

14             THE COURT:  That's a good point to bring up.

15   Actually, it's in the plea letter.  I was going to ask a

16   question.  I'm glad you brought that up.

17             MR. TEMKIN:  I'm sorry to interrupt, your Honor.

18             THE COURT:  No, no.  Not at all.  Please go ahead.

19   I want to make sure we cover everything that needs to be

20   covered.

21             So if the Government would read the statement of

22   offense, and then if you would then tie it to the elements

23   of the offense in terms of -- in summary form, what evidence

24   you have that is tied to that.  And then I'll ask

25   Mr. Friedman about what he agrees to.

1          So whichever attorney is going to do that.

2          MR. SPIRO:  Yes, your Honor.  Thank you.

3          At all relevant times, Zachary Friedman, the

4   Defendant, was a United States citizen who lived in New York

5   City, New York, or Dubai, United Arab Emirates.

6          Friedman worked as a consultant for the first half

7   of 2013.

8          THE COURT REPORTER:  Counsel, I'm going to ask you

9   to read more slowly, please.  I don't have a copy of what

10  you're reading from.

11         THE COURT:  Yes.  If you could do it a little

12  slower.

13         MR. SPIRO:  Starting in or about mid-2013 and

14  continuing in or about early 2015, Friedman was a senior

15  executive of a United States Department of Defense

16  contractor, Company 1, which was headquartered at the time

17  in Dubai, United Arab Emirates.

18         Starting in or about mid-2013, Friedman's

19  compensation package with Company 1 included both salary

20  payments and bonus payments.  Friedman directed that his

21  salary payments from Company 1 be sent via wire into a bank

22  account in the United States.  Friedman received several

23  bonus payments, including a severance bonus in early 2015 in

24  excess of $400,000.  Friedman directed that this payment be

25  split between his bank account and the bank account of an

 1    associate.

 2           For each of the tax years 2013 through 2015,

 3    Friedman filed false and fraudulent federal income tax

 4    returns on or about the dates listed below, which were

 5    prepared by a paid return preparer.  Tax years 2013 and 2014

 6    were filed jointly with his then-wife.  2015 was filed

 7    separately.

 8           Despite specific questions each year by his return

 9    preparers about his income and expenses, Friedman provided

10    false and incomplete information to the return preparers

11    about the amounts of salary and bonus he received from

12    Company 1 as well as false information about expenses for

13    each of the years 2013 through 2015, resulting in the

14    underpayment of his taxes for each of those years.

15           With respect to tax years 2013 through 2015,

16    Friedman filed false and fraudulent income tax returns,

17    failing to report $531,097.54 in taxable income, which is

18    mostly salary and income from Company 1, and including false

19    information about expenses.

20           The tax loss to the Internal Revenue Service for

21    those years is as follows:

22           2013:  He filed his return on approximately

23    September 15th, 2015.  He didn't report income of

24    approximately $80 ,668, and the approximate tax due and

25    owing was $37,651.

1          In 2014, he filed his return on approximately

2     October 14, 2015.  He did not report approximately

3     $142,229.45.  And the approximate tax due and owing for that

4     year was $102,911.

5          In 2015, he filed his return on approximately

6     September 30th, 2016.  He did not report approximately

7     $380,200.09.  And the approximate tax due and owing for that

8     year was $66,544.

9          The total amount of unreported income was

10    approximately $531,097.54 and the total approximate tax due

11    and owing was $207,106.

12         Friedman knowingly and willfully evaded the

13    above-mentioned taxes due and owing for the years 2013

14    through 2015.  Additionally, he provided false information

15    about expenses for 2014 and 2015.

16         Friedman committed the affirmative act of evasion

17    in providing his return preparers with false and incomplete

18    information and filing false and fraudulent income tax

19    returns that omitted the income detailed above and included

20    false information about expenses.

21         THE COURT:  If you could then tie it to the

22    elements of the offense.

23         MR. SPIRO:  The elements of this offense are

24    making an affirmative act constituting an attempt to evade

25    or defeat a tax or the payment thereof, which the Defendant

1    did, among other things, by misleading his tax return

2    preparers.

3            The second element is the additional tax due and

4    owing, which was mentioned earlier.

5            And the third element is willfulness, which is a

6    voluntary and intentional violation of a known legal duty,

7    which is the intent with which the Defendant acted.

8            THE COURT:  Mr. Friedman, is there anything you

9    disagree with in the statement of offense?

10           THE DEFENDANT:  No, your Honor.

11           THE COURT:  Is there anything you would not have

12   been aware of?  Sometimes the Government has evidence that

13   you would not have been aware of at the time.

14           THE DEFENDANT:  No, your Honor.

15           THE COURT:  So as I understand it, during the

16   period which would be 2013 through 2015, you were living

17   both in New York City as well as Dubai.  Is that correct?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  You worked as a consultant for the

20   first half of 2013 and then through 2015 you were a senior

21   executive for a specific U.S. Department of Defense

22   contractor.  Is that correct?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  I take it the contractor was

25   headquartered and you were headquartered in Dubai?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Starting in or around mid-2013, was

3     your compensation package from this particular contractor

4     both salary and bonus payments, and you directed that the

5     salary payments be sent by wire into a bank account in the

6     United States?  Is that correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And then you received several bonus

9     payments in addition to your salary.  That included a

10    severance bonus in early 2015 in excess of $400,000.  Is

11    that correct?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And did you direct that this severance

14    payment be split between your bank account and the bank

15    account of an associate?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And for each of the tax years 2013

18    through 2015, did you file false and fraudulent federal

19    income tax returns on the dates -- and I'll get to those --

20    which were prepared by a paid return preparer?  Is that

21    accurate?

22         THE DEFENDANT:  Yes.  Yes, your Honor.

23         THE COURT:  And the returns for tax years 2013 and

24    2014 were filed jointly with your then-wife and then in 2015

25    filed separately.  Is that correct?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And your tax preparer did ask you

3    specific questions, is that correct, about your income,

4    expenses, et cetera, in order to file accurate tax returns?

5    Is that correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And did you in response to those

8    questions from the income tax preparer provide false and

9    incomplete information about the amount of the salary, the

10   bonus that you received, as well as about your expenses for

11   each of those years?  Is that correct?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And as a result of that false

14   information, it resulted in an underpayment of your taxes

15   for each of those years.  Is that accurate?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  So with respect to tax years 2013

18   through 2015, do you agree you filed false and fraudulent

19   income tax returns, failing to report $531,097.54 in taxable

20   income?  Is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And that was mostly salary and income

23   from that defense contractor and it also included false

24   information about your expenses.  Is that correct?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Now, at the top of Page 3, it sets out

2     the tax year, the dates, the approximate unreported income

3     and the tax due and owing.

4          Do you agree with each of those without my having

5     to read each one of them?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So do you have any disputes about the

8     approximate unreported data as it's broken out -- and we've

9     gone over the totals -- or the tax owing for those

10    particular years?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  And did you know what you were doing

13    and realize that this was unlawful?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  And did you do this in order to be

16    able to -- did you realize that you did have taxes due and

17    owing for those years, but didn't pay them based on false

18    information you provided?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  And that included not only your income

21    and bonus, but as well your expenses.  Is that correct?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And you also affirmatively provided

24    the return preparer false and incomplete information so that

25    the tax returns that were actually filed on your behalf were

1      false and fraudulent.  Is that correct?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  So on an affirmative act constituting

4      an attempt to evade or defeat a tax or payment, two things:

5      One is certainly misleading the tax preparers in terms of

6      what the income, bonus and expenses were so that they would

7      underreport the income and you would not be paying the full

8      amount that was owed in taxes; and also the actual filing of

9      false and fraudulent tax returns not reflecting your actual

10     income, that you did owe additional taxes that were due and

11     owing.  You've agreed to that from 2014 to 2015.

12             Willfulness:  Was this a voluntary decision on

13     your part?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  And did you intentionally violate

16     something that you knew was unlawful conduct?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  I'll find that the proffer by the

19     Government and the admission of the Defendant as to his

20     conduct meets the elements of the offense to which he's

21     pleading guilty, which is tax evasion for the tax years of

22     2013 through 2015.

23             Is there any particular defense that he needs to

24     waive, counsel?

25             MR. TEMKIN:  Your Honor, other than venue, as

1    we've discussed, I'm not aware of any defense that would

2    be -- that he needs to waive.

3              THE COURT:  I'm sorry.  I missed the first part.

4    Other than...?

5              MR. TEMKIN:  Other than venue, which we've

6    discussed previously, I'm not aware of any defense that he

7    would need to waive at this time.

8              THE COURT:  So in terms of the plea letter, let me

9    move to that.  Do you have a copy in front of you?  And did

10   you read it over carefully?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  What I'm going to do is I'm going to

13   discuss with you slightly different than the way it's set

14   out in the letter.  I'm going to discuss the statutory

15   maximums and then the sentencing framework and what's

16   involved with the advisory sentencing guidelines.  So what I

17   would do is, although it's in there in the letter, it's

18   presented in a slightly different way than I'm going to go

19   over it.

20             So let me start with the -- these are obviously

21   the consequences of the unlawful action on your part.  So

22   there's statutory maximums.  There are by statute, by law,

23   maximum penalties.  And you cannot sentence someone above

24   those penalties.  That would be an unlawful sentence.

25             So the maximum sentence for jail time is five

1    years.  The maximum fine is $250,000 or two times the

2    pecuniary gain or loss; in other words, in terms of whatever

3    monetary gain or loss that you would have.

4         If you're given a period of jail time, then the

5    Court can also put you on supervised release in the

6    community.  You would have conditions of release associated

7    with that.  And if you violated it either by committing a

8    new crime or not following through with your requirements,

9    reporting requirements, providing financial information,

10   those kinds of things, then if the Court decided that you

11   had violated, depending on which grounds, then I could

12   revoke your supervised release and I could impose a new

13   sentence.  The new sentence is generally set out as a

14   combination of statute and the advisory sentencing

15   guidelines.

16        The important part is, you would not have your

17   sentence on the revocation reduced by the sentence you're

18   going to serve on the criminal offense.  In other words, you

19   wouldn't get credit for the period of time you've already

20   served.  You would get a new sentence and you would have to

21   serve that full sentence.

22        Do you understand all of that?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  And there's a special assessment,

25   which I cannot waive, which is $100.

1        And you also have agreed to restitution, which

2    I've indicated.  So there is a requirement for restitution

3    associated with this offense.

4        Now, having discussed the statutory maximum, we

5    then look at what the Court's going to do in terms of

6    sentencing.  There's a statute, 3553(a), which sets out

7    various factors for the Court to consider.  And these are

8    very broad things:  your background information, whether you

9    have any rehabilitation needs, the seriousness of the

10   offense, just punishment, deterrence to you, deterrence to

11   others, those kinds of broad considerations that the Court

12   takes into account in coming up with a fair and reasonable

13   sentence.

14       A presentence report will be prepared by the

15   probation department.  The probation department will set out

16   what the offense is.  You will give background information

17   in terms of personal information, education, criminal

18   history, if there is any job history, finances, whether you

19   have any medical issues, substance abuse issues.  They will

20   provide the Court with all this background information.

21       And they will also importantly do the calculations

22   on the advisory sentencing guidelines.  I'll get to that in

23   a minute.

24       Now, you and counsel and the Government will have

25   it before I get the presentence report to look it over.  And

1     you can object if you disagree with something factually

2     that's in there or if you disagree with the calculation that

3     they've proposed.

4            The probation department will either change the

5     report based on your objection or not change it, in which

6     case the presentence report when I get it will indicate what

7     the objection is and why they haven't changed it.  And then

8     I will rule on the objection before we go forward to

9     sentencing.

10           So are you following me so far?

11           THE DEFENDANT:  (No audible response.)

12           THE COURT:  You have to say something orally.

13           MR. TEMKIN:  I think we're muted.

14           THE DEFENDANT:  I was muted.

15           THE COURT:  No problem.

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  So in terms of the advisory sentencing

18    guidelines, Congress has set up this commission, which is to

19    consider different criminal offenses and to give basically

20    numbers associated with it depending on the seriousness of

21    the offense, different factors that would be considered.

22    And it's all points.  And sometimes the offenses have

23    specific characteristics that would either add points to it

24    or subtract points from it.

25           And this is to the -- the purpose of the

1    commission is to try and have some uniformity in the

2    sentencings of judges for the same offense.

3           So the advisory sentencing guidelines, they start

4    off with a base offense, which is basically a number

5    associated with the charge itself, and also the amount of

6    money that's involved with it usually will affect what the

7    number is.  It's 16.

8           It can be reduced by acceptance of responsibility.

9    If you accept responsibility for -- and continue to do so

10   for your conduct, two points can be reduced.  The Government

11   can file a motion for an additional point based on the fact

12   that you pled early, which you have, and the fact that you

13   continue to accept responsibility.  So let's assume you get

14   the three points.  So it's then at -- the offense level is

15   13.

16          My understanding is there is no criminal history.

17   Criminal history would be -- you look at convictions, what

18   type of offenses they were, how long ago they were, what

19   kind of a sentence there would be to get any -- again, it

20   would be points.

21          Since you have none, you're in Category I.  So

22   what you would do is you would look at the offense level.

23   And if you have a chart, it basically has down the left

24   column the numbers of the offense level, which is 13.  And

25   then across the top is the criminal history.  You're in

1    Criminal History I.  And so jail time would be a range of 12

2    to 18 months.  The fine range would be 5,000 to 55,000.

3             Now, within the framework of the advisory

4    sentencing guidelines, there are what we call departures.

5    And although the commission has considered what they view as

6    all the factors that should be considered relating to coming

7    up with the sentencing guideline range, there are very

8    narrow instances where the Court is allowed under this

9    system to either depart upward or depart downward.  And it's

10   very narrow in terms of it because the idea is that the

11   commission has actually considered everything that would be

12   relevant.

13            The one that would be of import to you is 5K1.1,

14   which would be based on cooperation and substantial

15   assistance.

16            Now, the Government controls this completely.

17   They decide how you can be of use.  I'll go through in the

18   plea letter when I get to it what kinds of cooperation you

19   might be asked to do.  But they control the type of

20   cooperation, when you start it, which you finish it.  And

21   you may be totally honest and provide everything, but they

22   also decide how useful it is for them in terms of whether

23   it's actually something that has provided them with

24   information on other cases or whatever.

25            So once you've provided whatever cooperation they

1    think is relevant, they then present that to a committee,

2    either at the U.S. Attorney's Office or the Department of

3    Justice, depending on which one they are using.  And they

4    will present what you did and any request for them to

5    approve that you get a departure motion.

6           If they approve it, then the Government will file

7    a motion to depart based on 5K1.1, which if the Court grants

8    it, I'm not bound by the range, the advisory sentencing

9    guideline range.  I can sentence you to something that is

10   less than that.

11          Do you understand that so far?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Now, they control this.  So you

14   provide all the information you know that you think would be

15   helpful.  You cooperate with them fully.  They present it;

16   and if they decide you did not provide substantial

17   assistance, neither your attorney nor I can require them to,

18   nor can I depart on those grounds unless they file that

19   motion.

20          Do you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Now, because these guidelines are

23   advisory, there is one option for the Court, and that's

24   called a variance.  It is very narrowly drawn and rarely

25   used because you're required under the Court of Appeals at

1    least in our circuit that you make the calculation per the

2    sentencing guidelines and that you explain in detail why

3    that calculation should not be applied in your particular

4    case, why you're getting a different sentence.

5          Usually, it's the defense, obviously, who is

6    asking for the variance.  It's rarely the Government, unless

7    it's a variance up.  It's usually issues about a variance

8    below the guideline range.

9          So there is always that option.  It's very rarely

10    done because it requires making findings that are hard to do

11    since the sentencing guidelines set out all of the kinds of

12    things that the commission considers appropriate.  But it is

13    there as an option.

14          So have you and your attorney discussed the

15    advisory sentencing guidelines?  And I would note that

16    evidently both have agreed that, as I've set out, that there

17    are no additional offense characteristics that would add any

18    points to the 16.  But have you discussed all of this with

19    your counsel?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And do you understand I won't be able

22    to determine the advisory guideline sentence until after I

23    get the presentence report and you, your lawyer and the

24    Government have had an opportunity to object to any facts or

25    conclusions that they've made and that the sentence imposed

1    may be different from the estimate that's been provided,

2    which is included in the plea letter?  Do you understand

3    that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that after I've

6    decided what guideline applies to your case, I have the

7    authority in some circumstances to impose a sentence that's

8    more severe or less severe?  And that's the departures that

9    I talked about.

10             Do you understand that?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  And do you also understand that the

13   Government has agreed to consider -- and this is --

14   "consider" is important -- filing this motion for downward

15   departure based on your cooperation, and that it's their

16   decision, only theirs, whether or not to file that motion,

17   and neither you nor your lawyer nor I can force them to file

18   that motion?  And if it's filed, then I would be making the

19   final decision about it.

20             Do you understand all of that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you also understand that -- I'm

23   required to say this -- parole has been abolished?  There's

24   an old system.  If you watch old movies, you know it.

25   Basically, you get a sentence, a jail sentence, and you can

1   serve part of your jail time in the community if the parole

2   commission has allowed you to do that.  It's totally

3   different from probation, totally different from supervised

4   release.  That no longer applies.

5          So if you're given a period of jail time, that's

6   what you will serve.  There's no parole.

7          Now, the Bureau of Prisons separately has their

8   own system for good-time credits.  The Court does not

9   control that at all.  They make that decision.  It's up to

10  54 days a year if you don't incur any infractions.  They're

11  the ones who control that.  But other than that, whatever

12  time, if I give you a sentence, that's actually what you've

13  served.

14         Do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Also, do you understand that by

17  pleading guilty to a felony offense and if I accept it, that

18  finding may deprive you of valuable civil rights?  The right

19  to vote, the right to hold public office, the right to serve

20  on a jury.

21         Now, all of those depend on where you live,

22  frankly.  And that is constantly changing.  In some places,

23  you never get these rights back.  In other places, you do in

24  some instances.  Some places have it that you don't lose

25  them at all.  Others have different years associated with

1    it.  So I'm not going to tell you what it would be.  But you

2    should just be aware that it certainly can be affected,

3    depending on where you reside.

4            Do you understand that?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  The other one is the right to possess

7    any kind of firearm or ammunition.  That one, even if you

8    live in a state where you can get a license, as a convicted

9    felon, under the federal statutes, you cannot possess a

10   firearm and ammunition.

11           Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Let me go to the plea letter itself.

14   If you have it in front of you, what I'm going to do is I'll

15   tell you what page and where I am so you can follow it.  I'm

16   not going to discuss every last thing here.

17           So starting on Page 1, we set out, which I've

18   already discussed with you, what you're pleading guilty to,

19   what the statutory penalties are.

20           On Page 2, again, the special assessment, the fact

21   that they're not going to charge you with anything

22   additional.

23           They also indicate that if you've told them about

24   some other conduct that was committed within D.C. or the

25   Southern District of New York prior to the execution, as

1    long as it's not violent, they will not charge you with

2    that.

3              Do you understand and agree to that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And tax fraud, which is what you're

6    pleading guilty to, is in the guideline calculations, which

7    are exactly what's in this particular letter.

8              Now, on Page 3, the paragraph under 2, it

9    indicates that the adjustment for acceptance of

10   responsibility, the two points or the additional third

11   point, that if you engage in any -- if you deny your

12   acceptance of responsibility, if you engage in other kinds

13   of conduct or if you move to withdraw your guilty plea,

14   then -- or you've engaged in conduct unknown to the

15   Government at the time of your plea, that would be

16   considered obstruction of justice, or engage in any

17   additional criminal conduct.  Then they can, you know, argue

18   that you should not get any points for acceptance of

19   responsibility.  So you would be left with the 16.

20             Do you understand and agree?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  The criminal history is at the bottom,

23   which we've spoken about.

24             Moving to Page 4, the guideline range, we've

25   talked about that.

```
1              You've also agreed under C for the second
2     paragraph that other than the one about potential -- your
3     cooperation, that no other upward or downward departures
4     would be warranted.
5              Is that your understanding and agreement?
6              THE DEFENDANT:  Yes, your Honor.
7              THE COURT:  And it may be that the calculation
8     will be different than what's presented here.  The official
9     one is what Probation does, although you can certainly
10    object to it.  But they actually go through and do the
11    calculation, and that's the official one that the Court
12    works with.
13             What you have in the plea letter is the best
14    estimate between counsel, so it may turn out to be
15    different.
16             Do you understand that?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  Basically what I'm saying is that this
19    estimated range that's in the plea letter is not binding
20    either on Probation or on me.  And if it turns out to be
21    different, that will not be a basis for rescission of this
22    agreement by either party.
23             Do you understand and agree?
24             THE DEFENDANT:  Yes, your Honor.
25             THE COURT:  Now, this all relates to conduct
```

1    before the execution of the agreement.  So if you get

2    involved in any conduct afterwards, which could be

3    obstructing justice, not showing up for court proceedings,

4    criminal conduct, false statements to law enforcement,

5    Probation or the Court, then they can seek an increase in

6    the base offense level based on this post-agreement conduct.

7              Do you understand and agree?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And if the Court sentences you within

10   the estimated guideline range, that would be considered a

11   reasonable sentence in relationship to the factors the Court

12   has to consider.

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  I need some water.  These masks can

15   dry your throat out.  Sorry.  We're still wearing masks in

16   the courthouse and sometimes in chambers.

17             Page 5, Paragraph 7, talks about whatever

18   recommendations are made, that the Court will be making an

19   independent decision.  And I can -- despite the guideline

20   range, I can sentence you up to the statutory maximum.

21             Do you understand and agree?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  And importantly, at the bottom

24   paragraph, that you will not have the right to withdraw your

25   plea if I impose a sentence that's outside the guideline

1    range or if I don't follow the Government's sentencing

2    recommendation or your counsel's recommendation.

3              Do you understand and agree?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Any efforts to withdraw the guilty

6    plea based on the length of the sentence will be considered

7    a breach of the agreement.  In other words, you're breaking

8    your end of the bargain.

9              Do you understand and agree?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Now, Page 6, on conditions of release:

12   They're not seeking a change in terms of where you are.  I

13   don't believe -- I think you recently have been interviewed

14   by Pretrial and we have a report in terms of their

15   recommendations.  So I'll deal with that at the end.

16             I do want to point out if I set release

17   conditions, that if you engage in any conduct that relates

18   to your remaining in the community, the Government can file

19   an *ex parte* -- in other words, not notice you -- requesting

20   that a bench warrant be issued and that you be detained.

21   That usually only occurs if you pose a danger or if you're

22   likely to flee or some other matter comes up.

23             Do you understand and agree?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  In terms of cooperation, which is Page

1    6, Paragraph 9, I'm not going to go through all of it.  But

2    Paragraph 8 sets out the basics:  You'll cooperate fully,

3    completely, truthfully with the offices, which are the U.S.

4    Attorney's Office, the Department of Justice, federal, state

5    and local law enforcement, that they identify on all

6    matters.  And they will decide what they view as relevant in

7    terms of your cooperation.

8         And your cooperation can include -- it doesn't

9    necessarily limit it to -- answering questions, providing

10   sworn statements, taking Government-administered polygraph

11   examinations or eventually participating in covert law

12   enforcement activities.

13        If you refuse to cooperate fully, truthfully and

14   completely as directed by the law enforcement authorities or

15   the Government counsel that have been identified, then that

16   will be considered as a potential breach of the agreement.

17   It will relieve the Government of any obligations that they

18   have, including discussing any kind of departure based on

19   substantial assistance.

20        But if you do engage in that conduct, which is

21   considered a breach, you still will not be able to withdraw

22   your guilty plea and it will not relieve you of your

23   obligations, although it will relieve the Government.

24        Do you understand and agree?

25        THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  C is that you're going to be giving an

2    accounting of your financial assets, et cetera.

3          And until you actually pay the restitution, they

4    will be requesting information relating to your finances, as

5    will presumably the probation office, in any kind of

6    sentence that the Court gives you until -- they'll want to

7    know what your finances are until it's paid off and then to

8    a lesser degree to make sure that you're continuing to

9    engage in lawful conduct.

10         So you'll also be obviously interviewed by the

11   Government lawyers or law enforcement agencies; and you are

12   retaining a right to have counsel present during those

13   interviews.  So whenever they set these interviews up, you

14   will have an opportunity to make sure your attorney is

15   present.  And they will do so as well.

16         You're also agreeing to testify fully and

17   truthfully before a grand jury in D.C. or elsewhere, at any

18   other trials or proceedings in D.C. or elsewhere, where the

19   Government views your testimony as relevant for their cases.

20         Do you understand and agree with that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  F is if you commit a criminal offense

23   during this period of cooperation or before sentence, again,

24   that'll be viewed as a breach of the agreement.  The

25   Government is relieved of their obligations, including the

1    departure issue, but you will not be entitled to withdraw

2    your guilty plea and you will not be relieved of your

3    obligations.

4              Do you understand and agree?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  And you're specifically agreeing to

7    maintain regular contact either in person or by telephone

8    with IRS Special Agent Adam Soline.  I'm not sure how to

9    pronounce that.  It's S-O-L-I-N-E.  Is it "Soline" or

10   "Soline"?

11             SPECIAL AGENT SOLINE:  "Soline."

12             THE COURT:  And he's on the video.

13             Are you agreeing to that as well?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  So let's move to the waivers, which

16   are on 7.  And this is -- venue is, you know, where the

17   charges can be brought and where you would have been tried.

18             Since you're a New York resident and the taxes

19   would have been paid while living at the time in New York,

20   there is an issue as to whether it should be done in the

21   District of Columbia or in New York.  And you've agreed not

22   to raise a legal challenge on venue grounds, that it should

23   be done in New York or elsewhere instead of D.C.

24             Is that correct?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Counsel, do you want to just indicate

2     what discussion you had with your client about that?

3          MR. TEMKIN:  Your Honor, we did discuss the fact

4     that he would have a right if he proceeded to be tried in

5     New York.  As a condition of the plea, the Government

6     requested that he waive the venue in New York; and we agreed

7     to that request.  But we did discuss the fact that if we

8     proceeded outside of this agreement, he would have the right

9     to be tried in New York.

10          THE COURT:  Is that correct in terms of your

11     understanding of the issue, Mr. Friedman?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  The statute of limitations is the next

14     waiver.  And that relates to -- Congress generally sets a

15     time period within which the Government has to charge

16     someone with a criminal offense.  And assuming that this is

17     within the statute of limitations, if it turns out that

18     after this agreement, if it's vacated -- in other words,

19     it's made null and void at some later point -- and between

20     the time that you've pled and the time it's vacated, the

21     statute of limitations would have run, you're basically

22     agreeing not to raise a defense of statute of limitations,

23     which bars any prosecution.

24          Is that your understanding and agreement?

25          THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Trial rights on Page 8:  I think I've

2     gone through everything.

3          The only additional one is the second sentence:

4     You're agreeing to forego the right to any further discovery

5     or disclosure of information that have not already been

6     provided to you before your guilty plea.

7          Are you agreeing to that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And importantly, the next paragraph

10    down, you're agreeing that you have discussed with your

11    counsel the Federal Rules of Criminal Procedure, the Federal

12    Rules of Evidence.  And these relate to statements that you

13    would have made in the course of plea discussions today.

14    This all comes up only if the plea is for some reason

15    withdrawn.  Then the issue comes up as to how those

16    admissions can be used.

17         Ordinarily, both the Rules of Criminal Procedure

18    and Federal Rules of Evidence generally restrict the use of

19    your admissions.  So if you get on the stand and say

20    something different than what you've said in any of these

21    other proceedings, that they can impeach you with your prior

22    statements.

23         You're agreeing that they can use these admissions

24    as evidence against you, not just to impeach.

25         Is that your understanding and agreement?

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  And you also are agreeing to --

3  sentencing will be delayed for some period in order to allow

4  you to cooperate.  And you are agreeing that the Government

5  controls the period of cooperation and the nature of the

6  cooperation.  So to some degree, they will determine as to

7  when your cooperation is completed, at which point we would

8  move to sentencing.

9      Do you understand and agree to that?

10      THE DEFENDANT:  Yes, your Honor.

11      THE COURT:  We've already gone through the appeal

12  rights, so let me move to Page 9, which talks about other

13  ways of challenging.

14      And under E, a collateral attack, so instead of a

15  direct appeal, we're now talking about a more indirect way

16  of challenging the conviction or the sentence or trying to

17  modify the sentence or change it in any way.  And they can

18  be -- examples would be 2255, which is a writ of *habeus*

19  *corpus*.  The civil procedure is the finality of judgments.

20      But there are exceptions, which is if your motion

21  is based on newly discovered evidence that you didn't have

22  at the time you entered your plea or if you claim that you

23  received ineffective assistance of counsel, then you would

24  be in a position to use these other vehicles to collaterally

25  attack either your conviction or your sentence.  So you're

1    giving up those rights.

2         Now, you are preserving the right to file a

3    motion.  And that is related to the advisory sentencing

4    guidelines.  So unless the commission changes the guidelines

5    and if they made it lower -- in other words, the

6    calculations would have put you in a lower advisory

7    guideline range -- then you are preserving the right to be

8    able to file a motion on those grounds.

9         One issue would be obviously as to whether it

10   would apply retroactively, which is always an issue in terms

11   of if at a later point that they change it.  But you are

12   allowed, preserving the right, to file such a motion.  If

13   the motion is denied, then you have agreed you will not

14   appeal it.

15        Is that your understanding and agreement about

16   your rights under the -- lack of rights under the collateral

17   attack?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  Self-incriminating:  So they can use

20   any information you provided, even if they were off the

21   record, anything that you said today or any other

22   discussions that you had.

23        Is that your understanding and agreement?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  And you've agreed to that specific

1    amount of restitution.  Is that correct?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  So you're not challenging the amount

4    that's actually owed?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Page 10:  There are issues under Title

7    26 about interest.  They will calculate that and provide an

8    updated interest figure.  You are allowed to challenge that

9    if it turns out you disagree with how they come up with it.

10   They have not set out what it is.  And it'll depend at what

11   point the sentencing occurs as to what the interest rate is

12   going to be and what it will actually entail.

13             Is that your understanding and agreement?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now, the restitution is due and owing

16   immediately.  The Court could impose a schedule -- in other

17   words, monthly payments -- that would be made until it's

18   completed.  And if you were sentenced to jail, the Bureau of

19   Prisons has a financial responsibility program in which you

20   work; you keep some of the money and some of the money would

21   go towards the restitution.

22             So even if you were making restitution payments,

23   there's nothing to preclude the IRS from going forward and

24   collecting the full amount of the restitution-based

25   assessment.

1          Do you understand and agree and have you discussed

2     this with your attorney?  That's Section E on Page 10.

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And F says that you will get credit if

5     you pay prior to the plea agreement.

6          Have you made some payments already?

7          MR. TEMKIN:  Your Honor, Mr. Friedman has not made

8     payments as yet.  We've been in discussions with Agent

9     Soline about having a revenue agent assigned to facilitate

10    the payment of reduction.  But that has not started yet.

11         THE COURT:  Okay.  So it's also the tax

12    liabilities, which will include the restitution.  It doesn't

13    resolve your civil tax liabilities.  And the IRS may --

14    beyond what this agreement is may seek additional taxes,

15    interest, other kinds of penalties that are not specifically

16    set out in this particular agreement.

17         So any restitution, satisfaction of restitution as

18    it's set out here, doesn't satisfy or compromise if there's

19    some additional civil tax liabilities.

20         Do you understand and agree?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And you're also authorizing the

23    release of information to IRS for them to figure out any

24    kind of civil tax restitution requirements.  Is that

25    correct?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Also, they've set out several things

3    on Page 11 -- and I'll go through them very quickly -- in

4    terms of when you actually get credit.  So IRS won't credit

5    it until they've actually received the payment, not when

6    you've sent it.

7          If it hasn't been made or can't be made

8    immediately, then you need to provide a financial disclosure

9    form so that they're in a position to find out, you know,

10   what payments are appropriate for you to be making in terms

11   of a particular payment schedule.

12         And if you make a payment, you'll be given credit

13   towards what the restitution is that's owed.  It sets out

14   where you send it to for D.C. in terms of the Court.  They

15   also set out where the restitution is that needs to be sent.

16   Also, the IRS will be informed if restitution is paid.

17         There is a system, and you should contact the

18   Court -- I think the correct person to contact -- they do

19   have a system where you can have the money wired in some way

20   so you don't have to come to the courthouse to make

21   payments.  So you should talk to them about how to do the

22   restitution in such a way that does not require your

23   physically doing anything or just plain mailing it, a much

24   more efficient way and frankly getting credit quicker if you

25   actually make payments.

1          THE DEFENDANT:  Thank you, your Honor.

2          THE COURT:  So you should have a discussion with

3     them about that.

4          THE DEFENDANT:  Thank you, your Honor.

5          THE COURT:  We're on Page 12.  You've agreed

6     you'll provide financial statements.  They will be accurate,

7     and the U.S. Attorney's Office can get a credit report on

8     you to evaluate your ability.

9          Are you agreeing to that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Let's move to Page 12 to 13, breach of

12    agreement.

13         Are you agreeing -- and understand -- that if you

14    fail to perform or fulfill each of your obligations under

15    the agreement or you engage in any criminal activity before

16    sentencing, you will be considered to have breached the

17    agreement, so you've not kept up your end of the bargain?

18         There are consequences to that:  The Government's

19    free from its obligations under the agreement.  You will not

20    have a right to withdraw the guilty plea.  You'll be fully

21    subject to criminal prosecution if you commit other crimes

22    such as perjury or obstructing justice.  The Government's

23    free to use against you directly or indirectly in any

24    criminal or civil proceeding all statements you've made, any

25    other information or materials you've provided, including

1    statements, information or materials pursuant to the

2    agreement or on debriefing or off-the-record things or

3    whatever has been discussed today.

4            Is that your understanding and agreement?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  In terms of -- if there is a breach,

7    the Government will be required to prove a breach of the

8    agreement by a preponderance of the evidence, which is

9    below, obviously, the standard and burden in a criminal

10   case, beyond a reasonable doubt.  And if it's based on

11   committing a federal, state or local crime, then the

12   standard or burden would be probable cause, which is even a

13   lower standard and burden.

14           Is that your understanding and agreement?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Also, if you provide any false

17   statements, declarations, commit perjury, obstruction of

18   justice relating to your obligations, that'll be a breach of

19   the agreement and you will not be able to withdraw your

20   guilty plea.

21           Do you understand and agree?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  In terms of Paragraph 14, it talks

24   about the U.S. Attorney's Office in terms of what they will

25   be doing and in terms of their considering the 5K1.1

1     substantial assistance.

2          The last sentence indicates if you fail to perform

3     and fulfill your obligations, then the Government's free

4     from its obligations under this agreement and -- which will

5     include not presenting any substantial assistance you might

6     have provided for the departure.

7          So even if you cooperate, if you engage in any --

8     if you don't follow through with what you're supposed to do,

9     you may still not get the benefit.

10          Do you understand and agree?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Is this the complete agreement?  Is

13     there anything else that we haven't talked about, your

14     counsel, Mr. Friedman, or Government counsel thinks needs to

15     be brought up?  If there's something in the plea letter that

16     I didn't bring up that you think is important, you can also

17     do that.

18          Government, anything?

19          MR. SPIRO:  No, your Honor.

20          THE COURT:  Counsel?

21          MR. TEMKIN:  No, your Honor.

22          THE COURT:  Mr. Friedman, anything?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  And this agreement binds the Criminal

25     and Superior Court Divisions of the U.S. Attorney's Office

1    for D.C. and the Tax Division of the Department of Justice.

2    It doesn't bind any other civil divisions of law enforcement

3    or U.S. attorney's office.

4           Is that your understanding and agreement?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  A few last questions about

7    voluntariness:

8           Has anyone, including your counsel, law

9    enforcement, the prosecutor or anyone else you've come in

10   contact with since your arrest promised or suggested to you

11   that just by pleading guilty that you are guaranteed a

12   lighter sentence?  I'm not talking about acceptance of

13   responsibility deductions or something of that nature.  Has

14   anybody promised you a specific sentence?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Has anyone forced, threatened or

17   coerced you in any way into entering this plea of guilty?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Do you understand the agreement

20   reached in this case resulted from negotiations between your

21   lawyer, the Government's lawyer and not the Court?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Has anyone made any promises to you in

24   connection with your guilty plea other than those in the

25   plea letter or the things we've talked about in open court?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Has anyone made any promises to you as

3     to what sentence I'll impose in this case if I accept your

4     guilty plea?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Do you understand that at this time, I

7     don't know what sentence I'll impose in your case since I

8     haven't heard from the lawyers, the probation office or you?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Are you entering this plea of guilty

11     voluntarily and of your own free will?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Are you entering this plea of guilty

14     because you are guilty of the offense that you've been

15     charged with?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Anything you don't understand?

18     Anything you want to ask me or your counsel?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  How do you, Zachary Friedman, plead to

21     Count 1 of the information, tax evasion for the tax years of

22     2013 through 2015:  guilty or not guilty?

23          THE DEFENDANT:  Guilty, your Honor.

24          THE COURT:  I'm satisfied the Defendant is fully

25     competent, capable of making a decision today, understands

1    the nature and consequences of what he's doing.  He's acting

2    voluntarily and of his own free will.  There's an adequate

3    factual basis for his plea.

4              Therefore, the plea is accepted and the Court

5    finds Zachary Friedman guilty of Count 1 of the information,

6    tax evasion for the tax years 2013 through 2015.

7              In terms of conditions of release, I will be

8    leaving him in the community.

9              Can we set -- do we have somebody from Pretrial

10   Services on?

11             THE COURTROOM DEPUTY:  No, Judge.

12             THE COURT:  I don't think there's -- is there a

13   pretrial services order?  I didn't see one.

14             THE COURTROOM DEPUTY:  Just -- yes.  There was a

15   report submitted.

16             THE COURT:  I know.  But there's no order?  In

17   other words --

18             THE COURTROOM DEPUTY:  No.  They didn't prepare

19   the order.  I just emailed her, and she said she didn't

20   prepare the order.  I guess the report is that the Defendant

21   reports by telephone --

22             THE COURT:  I think what would be helpful is if we

23   got somebody from Pretrial, because they're going to have to

24   fill out the form, aren't they?

25             THE COURTROOM DEPUTY:  I can fill it out from the

1    report that they submitted.

2           THE COURT:  Let me set out that you would --

3           MR. TEMKIN:  Your Honor?  Your Honor, I'm sorry.

4    If I might.

5           With respect to travel restrictions, Mr. Friedman

6    obviously lives in New York.  The three states contiguous,

7    New York, New Jersey and Connecticut, are frequently sort of

8    places where people living in New York will go.

9           He also has a house in Upstate New York.  And to

10    get there, he goes through New Jersey and Pennsylvania.  So

11    we would ask that your Honor extend the travel limits to

12    include New Jersey, Connecticut and Pennsylvania.

13           And then additionally, to the extent that he's

14    going to have to travel to Washington in order to fulfill

15    his cooperation, there's obviously a corridor that he would

16    pass through if he's either taking the train or driving.

17           THE COURT:  What is the Government's position?

18           MR. SPIRO:  No objection, your Honor.

19           THE COURT:  I don't have a problem.  What -- I

20    will go through those states in a moment again.  But I think

21    what I would do is in terms of his travel to the various

22    states you've talked about, leaving out Washington, D.C.,

23    for now.  For those particular states, he just needs to

24    notify Pretrial Services beforehand that he's going and

25    where he's going to be and for how long so they know where

1    he is, basically.

2           Now, if he's traveling for the day and not coming

3    back, I'm not talking about that.  But if he's going to be

4    gone for any length of time, he needs to let them know.

5    They need to know where he is at all times.

6           In terms of Washington, we can put something in

7    there, too.  He can come to Washington as part of his plea

8    agreement.  We'll leave it at that and not put cooperation

9    in.  As part of his plea agreement, he can come to

10   Washington to meet with different government entities.  I'll

11   put that.

12          MR. TEMKIN:  Your Honor --

13          THE COURT:  I don't have a problem with that.

14          The one thing is that if he's going to be going

15   out internationally or anything, he needs a court order in

16   advance.  So if he wants to do any kind of international

17   travel, he needs -- out of the continental United States, he

18   needs a prior court order.

19          So if he's planning anything, he needs to speak to

20   you; he needs to speak to the Government, Probation and get

21   a court order.  So he shouldn't do this at the last minute.

22   But I don't have a problem with his being able to travel to

23   those places.

24          The issue really is not if he's traveling for the

25   day.  The issue is if he's staying overnight.  In other

1    words, if he's out of New York, they want to know where he

2    is.

3            So all you need to do is let -- this is probably

4    not going to be done at the last minute.  Just let Pretrial

5    Services know beforehand that you're doing it, so where

6    you'll be and the timeframe you're going to be gone.  If

7    you're in Upstate New York or wherever, that's probably less

8    of an issue.  But if you're traveling in Connecticut for a

9    week or something, you need to let them know when you're

10   going, how long you're going to be there and where you're

11   going to be so they know where you are.

12           Now, since we don't have Pretrial Services on the

13   phone, Dorothy, can you --

14           Counsel, if you could once again give the states

15   so we'll put those in.

16           MR. TEMKIN:  Sure.  Your Honor, it would be

17   New York, New Jersey, Connecticut and Pennsylvania for

18   purposes of sort of local travel.  That would not entail

19   overnight.  That would just be --

20           THE COURT:  Right.  So he can travel locally.

21           MR. TEMKIN:  Yes.

22           THE COURT:  If he's going to stay overnight, then

23   he does need to let Pretrial Services know where he is and

24   how long he's going to be gone.

25           MR. TEMKIN:  Okay.  And just to be clear, your

1    Honor, if he's going to stay overnight in Upstate New York,

2    that would be covered by --

3              THE COURT:  Yes.  New York.

4              MR. TEMKIN:  Yes.  Okay.

5              And then just travel to Washington, D.C., for

6    purposes of the plea agreement would work just perfectly.

7              THE COURT:  I think it's a broad enough category.

8    It can be meeting with the prosecutors or something else.

9              Obviously, for court proceedings he can come.

10             Do you have all of that, Dorothy?

11             THE COURTROOM DEPUTY:  Yes.  Pretrial noted he can

12   travel to D.C. under the conditions of --

13             THE COURT:  Well, he can travel to D.C., but we

14   need to put in that it's related to his plea agreement and

15   obviously court appearances.

16             In terms of other conditions, not possess a

17   firearm, destructive devices or dangerous weapons, not

18   illegally possess a narcotic drug or other controlled

19   substance unless it's a prescribed medical condition; not

20   obtain a passport or other international travel documents.

21             Have you handed in your passport?  Do you have

22   one?

23             THE DEFENDANT:  Yes, your Honor.

24             MR. TEMKIN:  Your Honor, if I could just get from

25   Pretrial or get who actually I'm sending it to, Mr. Friedman

1    has given me his passport and I will arrange for it to be

2    delivered to Pretrial.

3              THE COURTROOM DEPUTY:  Judge, Pretrial is coming

4    on.

5              THE COURT:  I see Pretrial Services.

6              We've discussed travel, that he can travel locally

7    to various states, which Dorothy has, which is New York,

8    New Jersey, Connecticut and Pennsylvania.  If he stays

9    overnight anyplace, he needs to let you know what dates he's

10   going to be overnight and where he's going to be.  He can

11   travel to D.C. for court proceedings or reasons of his plea

12   agreement.

13             And then we have the other conditions you've set

14   out:  not possess a firearm, et cetera, not possess narcotic

15   drugs, et cetera.  He has a passport -- or his counsel does.

16   Where do you want -- how do you want it presented to

17   Pretrial?

18             THE PRETRIAL SERVICES OFFICER:  The passport, I

19   can email the address that he can send the passport to.

20             THE COURT:  Great.

21             So surrender the passport, not obtain one.  Report

22   as soon as possible.

23             Are we having him report in D.C. or are we having

24   him report immediately in New York?

25             THE PRETRIAL SERVICES OFFICER:  D.C. Pretrial will

1    remain in control of his case, so he'll report to us by

2    telephone.

3              THE COURT:  So, counsel, information will be

4    provided to you by a D.C. Pretrial person in terms of how

5    you set it up.  The report will come to me from D.C.  They

6    probably will make an arrangement in New York in terms of

7    following up with some of this.

8              Is that correct, Ms. Holman?

9              THE PRETRIAL SERVICES OFFICER:  Your Honor, I

10   believe he never was presented in New York.

11             THE COURT:  Right.

12             THE PRETRIAL SERVICES OFFICER:  So if I'm correct,

13   there's no need for us to follow up with any courtesy

14   supervision or anything in New York.  Everything will be

15   handled by our office.

16             THE COURT:  That'll work.

17             Basically, you're going to be calling in, so

18   you're not making an appearance to a pretrial services

19   office.  You're basically going to be calling in.

20             But there'll be an order as I've set out these

21   conditions; and you should have contact with them, Pretrial

22   Services, through a phone or email as to where he needs to

23   call, et cetera, so he has an idea of what he needs to do.

24             THE PRETRIAL SERVICES OFFICER:  Yes.

25             THE COURT:  Because they'll find out.  Obviously,

1    any contact, including traffic things, you need to let

2    Pretrial Services know of that.

3            The last one we're changing is travel.  As I've

4    indicated, he can travel in New York, Connecticut,

5    New Jersey and Pennsylvania, locally travel.  If he stays

6    overnight, he has to let you know.

7            THE PRETRIAL SERVICES OFFICER:  Okay.  And D.C. or

8    just those four?

9            THE COURT:  Well, those four and in D.C. he can

10   come for court appearances, the plea agreement or court.

11           THE PRETRIAL SERVICES OFFICER:  Okay.

12           THE COURT:  He has a cooperation agreement, so

13   there may be reasons for him to come.

14           Anything else we need to set as conditions?

15           THE PRETRIAL SERVICES OFFICER:  Not to my

16   knowledge.

17           Did you notify him he would need a court order to

18   travel out of the continental United States?

19           THE COURT:  We need to put that in.  If he goes

20   outside the continental United States, he does need to -- he

21   does need to have a court order.

22           THE PRETRIAL SERVICES OFFICER:  Correct.

23           And then it has the other conditions we had, which

24   was that he not possess any firearm or destructive device.

25           THE COURT:  Yes.  The rest of the conditions,

1       firearms, drugs, et cetera.

2              THE PRETRIAL SERVICES OFFICER:  Okay.  So

3       everything we have now, plus the reporting about the travel.

4              THE COURT:  I think so.  Let me just look.

5              Yes.  That's fine.

6              THE PRETRIAL SERVICES OFFICER:  I will submit that

7       order.

8              THE COURT:  Let's choose a day.  What are we

9       looking at?

10             Let me ask the Government.  When do you think we

11      would -- I generally have -- we could do a Zoom hearing

12      after the plea particularly, not just reports, to make sure

13      everything is working smoothly.  So give me a week that you

14      want to do things.  I have a fairly full trial calendar.

15      I'm trying not to set matters on the days that I'm in trial.

16             MR. SPIRO:  Approximately how far in the future

17      out were you thinking, your Honor?

18             THE COURT:  It depends on the nature of his

19      cooperation in terms of when you think there's something to

20      discuss.  We could do 60 days or 90 days, as most people do,

21      unless you think it's going to be faster.

22             MR. SPIRO:  Perhaps the week of October 24th, your

23      Honor?

24             THE COURT:  That actually is between my trials.

25             How about October 25th in the morning?

```
 1              MR. SPIRO:  Can do, your Honor.

 2              THE COURT:  At 10:00, say.  Does that work for

 3    counsel and Mr. Friedman?

 4              Are you working, Mr. Friedman?

 5              THE DEFENDANT:  Yes, your Honor.  I can be

 6    available that day.  Whenever is convenient.

 7              THE COURT:  Are you working?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  What do you do?

10              THE DEFENDANT:  I am working for an education

11    company that my wife and I cofounded and own.

12              THE COURT:  So you're self-employed?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  So in other words, you've got a little

15    bit of leeway in terms of setting dates.

16              Does it work for counsel, October 25th at 10:00?

17    We'll do it by Zoom.  We're still in that period.

18              Sentencings need to be done in person depending on

19    what they do with the extension of the CARES Act.  At this

20    point, it's through November 9th.  There's no reason not to

21    be able to do it.  It should be a fairly quick hearing.

22              What I would ask is that if the Government could,

23    say, by October 21st file under seal -- you can make it

24    *ex parte* -- where you are with the cooperation just so I get

25    a better sense of what's going on.  That way, when we have
```

1    the hearing we don't have to do it on the record in terms of

2    specifics.  It will tell me what's happening.

3              MR. SPIRO:  Your Honor, I apologize.  In

4    discussion with co-counsel, I think we could actually set a

5    day slightly later out, perhaps in early December, if that's

6    all right.

7              THE COURT:  Let me look again at my calendar.

8    Give me a week.  I have some trials in December.  Give me a

9    week.

10              MR. SPIRO:  Perhaps --

11              THE COURT:  Actually, it looks like between --

12    this is a constantly evolving thing, but it looks like

13    between --

14              THE COURTROOM DEPUTY:  December 7, 8 or 9.

15              THE COURT:  December 7, 8 and 9 are good.

16              MR. SPIRO:  Any of those dates work for us, your

17    Honor.

18              THE COURT:  Defense counsel or Mr. Friedman, is

19    any day of the week better than the others?  This is a

20    Wednesday, Thursday or Friday.

21              MR. TEMKIN:  All of them are certainly fine, your

22    Honor.

23              THE COURT:  How about, then, December 8th at

24    10:00?  I think that works for everybody.

25              Anything else, Dorothy?

1          THE COURTROOM DEPUTY:  Do you want to give him a

2     date for a report, Judge?

3          THE COURT:  Oh, yes.  It's something short.  It

4     just makes it easier.  Otherwise, I get these opaque

5     discussions where nobody wants to say anything on the open

6     record.  How about the 5th, December 5th?  Just something

7     short.

8          MS. GOEMAAT:  That's to be filed *ex parte*, your

9     Honor?  Can that be filed *ex parte*?

10         THE COURT:  Yes.  I don't have a problem with

11    that.  His counsel will know what -- *ex parte* is useful

12    because sometimes it's important not to let the Defendant

13    know how things are being used so it doesn't affect the

14    credibility of the witness if it comes to that.

15         Let me do one other thing.  I'm signing the waiver

16    of trial and indictment.  I have a booking order.  Do you

17    want that one as well?

18         MS. DAVIS:  Your Honor, the Defendant was

19    processed by the U.S. Marshals yesterday.  I don't think we

20    need the booking order.

21         THE COURT:  I'll sign both of these.  And I think

22    that's it.

23         Dorothy, anything else?

24         THE COURTROOM DEPUTY:  He just needs to swear to

25    his conditions of release.

1          THE COURT:  I'm sorry?

2          THE COURTROOM DEPUTY:  I just need to swear him on

3     his conditions of release.

4          THE COURT:  Oh, yes.  Go ahead.

5          THE COURTROOM DEPUTY:  Would you raise your right

6     hand, please, sir?

7          Do you solemnly swear that you will abide by all

8     the conditions of release set forth by the Court?  Violation

9     of any of these conditions will result into a warrant for

10    your arrest.  Do you understand these conditions?  And your

11    next court appearance is December 8th of 2022 at 10:00 a.m.

12    by Zoom.

13         THE DEFENDANT:  Yes.

14         THE COURTROOM DEPUTY:  Thank you.

15         THE COURT:  Anything else from defense counsel or

16    the Government?

17         MR. TEMKIN:  No.  Thank you, your Honor.

18         THE COURT:  Then the parties are excused.  Take

19    care.  And if I don't hear from you in between, I'll hear

20    from you in December.  We'll do it by Zoom, because I think

21    it's just a status hearing.  Even if the CARES Act expires,

22    there's not going to be a problem with that, as long as he's

23    amenable to doing that.

24         MR. SPIRO:  Thank you, your Honor.

25         THE DEFENDANT:  Thank you, your Honor.

1                    MS. GOEMAAT:  Thank you, your Honor.

2                    THE COURT:  The parties are excused.

3                    (Proceedings concluded.)

1                                    **CERTIFICATE**

2

3                              I, LISA EDWARDS, RDR, CRR, do hereby

4         certify that the foregoing constitutes a true and accurate

5         transcript of my stenographic notes, and is a full, true,

6         and complete transcript of the proceedings produced to the

7         best of my ability.

8

9

10                             Dated this 16th day of November, 2022.

11

12                        /s/ Lisa Edwards, RDR, CRR
                          Official Court Reporter
13                        United States District Court for the
                            District of Columbia
14                        333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
15                        (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## $

**$100** [1] - 29:25
**$102,911** [1] - 22:4
**$142,229.45** [1] - 22:3
**$207,106** [2] - 9:12, 22:11
**$250,000** [1] - 29:1
**$37,651** [1] - 21:25
**$380,200.09** [1] - 22:7
**$400,000** [2] - 20:24, 24:10
**$531,097.54** [3] - 21:17, 22:10, 25:19
**$66,544** [1] - 22:8
**$80** [1] - 21:24

## /

**/s** [1] - 72:12

## 1

**1** [10] - 6:9, 9:5, 20:16, 20:19, 20:21, 21:12, 21:18, 38:17, 57:21, 58:5
**10** [3] - 10:11, 50:6, 51:2
**10017** [1] - 1:24
**10:00** [4] - 67:2, 67:16, 68:24, 70:11
**10:08** [1] - 1:7
**11** [1] - 52:3
**12** [5] - 12:11, 13:4, 33:1, 53:5, 53:11
**13** [3] - 32:15, 32:24, 53:11
**14** [4] - 17:22, 18:4, 22:2, 54:23
**150** [1] - 1:16
**15th** [1] - 21:23
**16** [4] - 12:12, 32:7, 35:18, 39:19
**16th** [1] - 72:10
**18** [1] - 33:2
**1978** [2] - 10:11, 10:13

## 2

**2** [2] - 38:20, 39:8
**20001** [2] - 2:5, 72:14
**20002** [1] - 1:16
**2013** [16] - 9:5, 20:7,

21:2, 21:5, 21:13, 21:15, 21:22, 22:13, 23:16, 23:20, 24:17, 24:23, 25:17, 27:22, 57:22, 58:6
**2014** [5] - 21:5, 22:1, 22:15, 24:24, 27:11
**2015** [22] - 9:6, 20:14, 20:23, 21:2, 21:6, 21:13, 21:15, 21:23, 22:2, 22:5, 22:14, 22:15, 23:16, 23:20, 24:10, 24:18, 24:24, 25:18, 27:11, 27:22, 57:22, 58:6
**2016** [1] - 22:6
**202** [2] - 2:6, 72:15
**2022** [3] - 1:6, 70:11, 72:10
**20530** [1] - 1:20
**21st** [1] - 67:23
**22-00263** [1] - 1:3
**22-263** [2] - 3:1, 6:8
**2255** [1] - 48:18
**23** [1] - 12:12
**24th** [1] - 66:22
**25** [2] - 1:6, 5:13
**25th** [3] - 4:6, 66:25, 67:16
**26** [2] - 9:6, 50:7

## 3

**3** [2] - 26:1, 39:8
**30th** [1] - 22:6
**333** [2] - 2:4, 72:14
**354-3269** [2] - 2:6, 72:15
**3553(a** [1] - 30:6

## 4

**4** [1] - 39:24
**44** [1] - 10:9
**48** [1] - 10:25

## 5

**5** [1] - 41:17
**5,000** [1] - 33:2
**54** [1] - 37:10
**55,000** [1] - 33:2
**555** [1] - 1:19
**565** [1] - 1:23
**5K1.1** [3] - 33:13, 34:7, 54:25
**5th** [2] - 69:6

## 6

**6** [2] - 42:11, 43:1
**60** [1] - 66:20
**668** [1] - 21:24
**6706** [1] - 2:5

## 7

**7** [4] - 41:17, 45:16, 68:14, 68:15
**7201** [1] - 9:6

## 8

**8** [5] - 15:10, 43:2, 47:1, 68:14, 68:15
**8th** [2] - 68:23, 70:11

## 9

**9** [4] - 43:1, 48:12, 68:14, 68:15
**90** [1] - 66:20
**9th** [2] - 4:16, 67:20

## A

**a.m** [2] - 1:7, 70:11
**abide** [1] - 70:7
**ability** [2] - 53:8, 72:7
**able** [8] - 17:13, 26:16, 35:21, 43:21, 49:8, 54:19, 60:22, 67:21
**abolished** [1] - 36:23
**above-mentioned** [1] - 22:13
**Abramowitz** [1] - 3:15
**ABRAMOWITZ** [1] - 1:22
**abuse** [1] - 30:19
**accept** [7] - 11:23, 14:16, 18:14, 32:9, 32:13, 37:17, 57:3
**acceptance** [5] - 32:8, 39:9, 39:12, 39:18, 56:12
**accepted** [1] - 58:4
**account** [7] - 20:22, 20:25, 24:5, 24:14, 24:15, 30:12
**accounting** [1] - 44:2
**accurate** [6] - 4:9,

24:21, 25:4, 25:15, 53:6, 72:4
**act** [3] - 22:16, 22:24, 27:3
**Act** [3] - 4:15, 67:19, 70:21
**acted** [1] - 23:7
**acting** [1] - 58:1
**action** [1] - 28:21
**Action** [1] - 1:3
**activities** [1] - 43:12
**activity** [1] - 53:15
**actual** [2] - 27:8, 27:9
**Adam** [2] - 3:7, 45:8
**add** [2] - 31:23, 35:17
**addition** [1] - 24:9
**additional** [11] - 17:13, 23:3, 27:10, 32:11, 35:17, 38:22, 39:10, 39:17, 47:3, 51:14, 51:19
**additionally** [2] - 22:14, 59:13
**address** [1] - 63:19
**adequate** [1] - 58:2
**adjustment** [1] - 39:9
**administered** [1] - 43:10
**admission** [1] - 27:19
**admissions** [3] - 47:16, 47:19, 47:23
**admitted** [2] - 8:5, 15:21
**admitting** [1] - 16:3
**advance** [1] - 60:16
**advisory** [12] - 28:16, 29:14, 30:22, 31:17, 32:3, 33:3, 34:8, 34:23, 35:15, 35:22, 49:3, 49:6
**affect** [2] - 32:6, 69:13
**affected** [1] - 38:2
**affirmatively** [1] - 26:23
**afford** [3] - 13:11, 15:2, 18:10
**affords** [1] - 16:20
**Afghanistan** [1] - 3:9
**afterwards** [1] - 41:2
**agencies** [1] - 44:11
**agent** [1] - 51:9
**Agent** [4] - 3:7, 3:8, 45:8, 51:8
**AGENT** [1] - 45:11
**ago** [1] - 32:18
**agree** [21] - 7:25,

18:5, 18:11, 25:18, 26:4, 39:3, 39:20, 40:23, 41:7, 41:21, 42:3, 42:9, 42:23, 43:24, 44:20, 45:4, 48:9, 51:1, 51:20, 54:21, 55:10
**agreed** [16] - 6:25, 9:8, 9:11, 9:13, 19:12, 27:11, 30:1, 35:16, 36:13, 40:1, 45:21, 46:6, 49:13, 49:25, 53:5
**agreeing** [15] - 8:15, 15:16, 16:21, 44:16, 45:6, 45:13, 46:22, 47:4, 47:7, 47:10, 47:23, 48:2, 48:4, 53:9, 53:13
**agreement** [43] - 5:12, 7:8, 10:4, 17:9, 17:16, 40:5, 40:22, 41:1, 41:6, 42:7, 43:16, 44:24, 46:8, 46:18, 46:24, 47:25, 49:15, 49:23, 50:13, 51:5, 51:14, 51:16, 53:12, 53:15, 53:17, 53:19, 54:2, 54:4, 54:8, 54:14, 54:19, 55:4, 55:12, 55:24, 56:4, 56:19, 60:8, 60:9, 62:6, 62:14, 63:12, 65:10, 65:12
**agreements** [1] - 9:24
**agrees** [2] - 19:7, 19:25
**ahead** [2] - 19:18, 70:4
**alcohol** [1] - 10:24
**allocution** [1] - 9:21
**allow** [1] - 48:3
**allowed** [4] - 33:8, 37:2, 49:12, 50:8
**amenable** [1] - 70:23
**America** [1] - 3:2
**AMERICA** [1] - 1:3
**ammunition** [2] - 38:7, 38:10
**amount** [9] - 8:8, 9:11, 22:9, 25:9, 27:8, 32:5, 50:1, 50:3, 50:24
**amounts** [1] - 21:11
**Anello** [1] - 3:15
**ANELLO** [1] - 1:22
**Angeles** [1] - 10:22
**anonymized** [2] - 3:24, 4:2

answer [2] - 6:23, 8:24
answering [1] - 43:9
anyplace [1] - 63:9
apologize [1] - 68:3
appeal [23] - 14:24, 15:1, 15:7, 15:18, 15:25, 16:6, 16:7, 16:10, 16:20, 16:22, 17:7, 17:10, 17:13, 17:14, 17:22, 18:2, 18:3, 18:8, 18:16, 18:21, 48:11, 48:15, 49:14
Appeals [4] - 14:24, 16:8, 17:25, 34:25
Appeals' [1] - 16:11
appearance [2] - 64:18, 70:11
appearances [3] - 1:13, 62:15, 65:10
appearing [1] - 3:7
applied [1] - 35:3
applies [3] - 4:15, 36:6, 37:4
apply [2] - 18:8, 49:10
applying [1] - 13:2
appointed [3] - 13:12, 15:2, 18:10
appropriate [2] - 35:12, 52:10
approve [2] - 34:5, 34:6
approximate [6] - 21:24, 22:3, 22:7, 22:10, 26:2, 26:8
April [1] - 10:11
Arab [2] - 20:5, 20:17
areas [1] - 8:13
argue [1] - 39:17
arraigned [2] - 4:18, 4:22
arrange [1] - 63:1
arrangement [1] - 64:6
arrest [2] - 56:10, 70:10
aspect [1] - 19:9
assert [1] - 14:10
assessment [3] - 29:24, 38:20, 50:25
assets [1] - 44:2
assigned [1] - 51:9
assistance [7] - 17:12, 33:15, 34:17, 43:19, 48:23, 55:1, 55:5
associate [3] - 10:20, 21:1, 24:15

associated [5] - 29:6, 30:3, 31:20, 32:5, 37:25
assume [1] - 32:13
assuming [2] - 4:8, 46:16
attack [3] - 48:14, 48:25, 49:17
attempt [2] - 22:24, 27:4
attorney [6] - 13:19, 20:1, 34:17, 35:14, 44:14, 51:2
Attorney's [5] - 34:2, 43:4, 53:7, 54:24, 55:25
attorney's [1] - 56:3
ATTORNEY'S [1] - 1:18
attorneys [2] - 11:19, 11:22
audible [2] - 4:23, 31:11
August [1] - 1:6
authorities [1] - 43:14
authority [2] - 17:1, 36:7
authorizing [1] - 51:22
available [1] - 67:6
Avenue [3] - 1:23, 2:4, 72:14
award [1] - 16:24
aware [5] - 23:12, 23:13, 28:1, 28:6, 38:2

**B**

background [5] - 7:15, 10:6, 30:8, 30:16, 30:20
bank [6] - 20:21, 20:25, 24:5, 24:14
bargain [2] - 42:8, 53:17
bars [1] - 46:23
base [2] - 32:4, 41:6
based [14] - 13:1, 13:5, 26:17, 31:5, 32:11, 33:14, 34:7, 36:15, 41:6, 42:6, 43:18, 48:21, 50:24, 54:10
bases [1] - 18:3
basic [1] - 10:4
basics [1] - 43:2
basis [4] - 15:19,

17:11, 40:21, 58:3
BEFORE [1] - 1:10
beforehand [2] - 59:24, 61:5
behalf [4] - 3:6, 5:5, 14:4, 26:25
below [3] - 21:4, 35:8, 54:9
bench [1] - 42:20
benefit [2] - 16:10, 55:9
best [2] - 40:13, 72:7
better [2] - 67:25, 68:19
between [9] - 20:25, 24:14, 40:14, 46:19, 56:20, 66:24, 68:11, 68:13, 70:19
beyond [5] - 8:4, 10:20, 14:18, 51:14, 54:10
bind [1] - 56:2
binding [1] - 40:19
binds [1] - 55:24
birth [1] - 10:10
bit [1] - 67:15
bonus [10] - 20:20, 20:23, 21:11, 24:4, 24:8, 24:10, 25:10, 26:21, 27:6
booking [3] - 5:21, 69:16, 69:20
born [2] - 10:21, 10:22
bottom [3] - 15:10, 39:22, 41:23
bound [1] - 34:8
breach [8] - 42:7, 43:16, 43:21, 44:24, 53:11, 54:6, 54:7, 54:18
breached [1] - 53:16
breaking [1] - 42:7
briefly [1] - 7:13
bring [2] - 19:14, 55:16
broad [3] - 30:8, 30:11, 62:7
broken [1] - 26:8
brought [6] - 7:11, 8:18, 12:22, 19:16, 45:17, 55:15
Browning [1] - 3:9
burden [4] - 14:17, 54:9, 54:12, 54:13
Bureau [2] - 37:7, 50:18
BY [1] - 2:2

**C**

calculate [1] - 50:7
calculation [5] - 31:2, 35:1, 35:3, 40:7, 40:11
calculations [3] - 30:21, 39:6, 49:6
calendar [2] - 66:14, 68:7
California [1] - 10:23
cannot [7] - 14:6, 14:11, 14:19, 16:2, 28:23, 29:25, 38:9
capable [1] - 57:25
care [1] - 70:19
carefully [2] - 15:8, 28:10
CARES [3] - 4:15, 67:19, 70:21
Case [3] - 3:1, 6:8
case [11] - 11:4, 11:19, 11:22, 12:21, 15:18, 16:7, 16:23, 17:23, 18:14, 18:21, 19:1, 31:6, 35:4, 36:6, 54:10, 56:20, 57:3, 57:7, 64:1
cases [2] - 33:24, 44:19
category [1] - 62:7
Category [1] - 32:21
certain [4] - 3:24, 8:16, 9:23, 16:21
certainly [5] - 8:18, 27:5, 38:2, 40:9, 68:21
CERTIFICATE [1] - 72:1
certify [1] - 72:4
cetera [7] - 8:12, 25:4, 44:2, 63:14, 63:15, 64:23, 66:1
challenge [2] - 45:22, 50:8
challenging [3] - 48:13, 48:16, 50:3
chambers [1] - 41:16
CHANGE [1] - 1:10
change [6] - 5:5, 31:4, 31:5, 42:12, 48:17, 49:11
changed [2] - 7:4, 31:7
changes [2] - 4:8, 49:4
changing [2] - 37:22, 65:3
characteristics [2] -

31:23, 35:17
charge [7] - 5:23, 11:15, 32:5, 38:21, 39:1, 46:15
charged [3] - 6:9, 9:4, 57:15
charges [3] - 9:8, 12:7, 45:17
chart [1] - 32:23
choose [2] - 10:2, 66:8
circuit [1] - 35:1
circumstances [3] - 16:21, 17:7, 36:7
citizen [1] - 20:4
citizens [2] - 12:22, 13:4
City [2] - 20:5, 23:17
civil [7] - 37:18, 48:19, 51:13, 51:19, 51:24, 53:24, 56:2
claim [3] - 17:11, 17:12, 48:22
claiming [1] - 15:25
claims [1] - 15:19
clarification [1] - 6:22
clear [1] - 61:25
client [1] - 46:2
co [1] - 68:4
co-counsel [1] - 68:4
coerced [1] - 56:17
cofounded [1] - 67:11
collateral [2] - 48:14, 49:16
collaterally [1] - 48:24
collecting [1] - 50:24
COLLEEN [1] - 1:10
Columbia [5] - 2:4, 12:22, 19:13, 45:21, 72:13
COLUMBIA [2] - 1:1, 1:18
column [1] - 32:24
combination [1] - 29:14
coming [4] - 30:12, 33:6, 60:2, 63:3
commission [7] - 31:18, 32:1, 33:5, 33:11, 35:12, 37:2, 49:4
commit [3] - 44:22, 53:21, 54:17
committed [4] - 12:13, 12:14, 22:16, 38:24
committee [1] - 34:1

**committing** [2] - 29:7, 54:11
**community** [7] - 9:14, 9:19, 9:20, 29:6, 37:1, 42:18, 58:8
**companies** [2] - 3:24, 4:5
**company** [1] - 67:11
**Company** [5] - 20:16, 20:19, 20:21, 21:12, 21:18
**compensation** [2] - 20:19, 24:3
**competent** [1] - 57:25
**complete** [2] - 55:12, 72:6
**completed** [2] - 48:7, 50:18
**completely** [4] - 11:18, 33:16, 43:3, 43:14
**compromise** [1] - 51:18
**concluded** [1] - 71:3
**conclusions** [1] - 35:25
**condition** [3] - 16:25, 46:5, 62:19
**conditions** [18] - 9:18, 17:1, 29:6, 42:11, 42:17, 58:7, 62:12, 62:16, 63:13, 64:21, 65:14, 65:23, 65:25, 69:25, 70:3, 70:8, 70:9, 70:10
**conduct** [20] - 8:1, 8:5, 15:21, 16:3, 16:9, 18:1, 27:16, 27:20, 32:10, 38:24, 39:13, 39:14, 39:17, 40:25, 41:2, 41:4, 41:6, 42:17, 43:20, 44:9
**CONDUCTED** [1] - 1:10
**conference** [1] - 3:16
**confront** [1] - 13:19
**Congress** [2] - 31:18, 46:14
**Connecticut** [6] - 59:7, 59:12, 61:8, 61:17, 63:8, 65:4
**connection** [1] - 56:24
**consequences** [4] - 8:12, 28:21, 53:18, 58:1
**consider** [5] - 30:7, 31:19, 36:13, 36:14, 41:12

**consideration** [1] - 12:7
**considerations** [1] - 30:11
**considered** [10] - 31:21, 33:5, 33:6, 33:11, 39:16, 41:10, 42:6, 43:16, 43:21, 53:16
**considering** [1] - 54:25
**considers** [1] - 35:12
**constantly** [2] - 37:22, 68:12
**constitutes** [1] - 72:4
**constituting** [2] - 22:24, 27:3
**Constitution** [2] - 2:4, 72:14
**constitutional** [3] - 7:16, 12:1, 14:10
**consult** [1] - 6:18
**consultant** [2] - 20:6, 23:19
**contact** [6] - 45:7, 52:17, 52:18, 56:10, 64:21, 65:1
**contiguous** [1] - 59:6
**continental** [3] - 60:17, 65:18, 65:20
**continue** [2] - 32:9, 32:13
**continuing** [2] - 20:14, 44:8
**contractor** [5] - 20:16, 23:22, 23:24, 24:3, 25:23
**control** [5] - 33:19, 34:13, 37:9, 37:11, 64:1
**controlled** [1] - 62:18
**controls** [2] - 33:16, 48:5
**convenient** [1] - 67:6
**convicted** [4] - 14:19, 14:23, 16:5, 38:8
**conviction** [6] - 15:18, 15:25, 17:10, 17:15, 48:16, 48:25
**convictions** [2] - 14:24, 32:17
**convince** [1] - 12:11
**cooperate** [5] - 34:15, 43:2, 43:13, 48:4, 55:7
**cooperation** [18] - 33:14, 33:18, 33:20,

33:25, 36:15, 40:3, 42:25, 43:7, 43:8, 44:23, 48:5, 48:6, 48:7, 59:15, 60:8, 65:12, 66:19, 67:24
**copy** [6] - 5:1, 5:2, 6:1, 11:13, 20:9, 28:9
**corpus** [1] - 48:19
**correct** [23] - 4:19, 4:20, 12:18, 23:17, 23:22, 24:6, 24:11, 24:25, 25:3, 25:5, 25:11, 25:20, 25:24, 26:21, 27:1, 45:24, 46:10, 50:1, 51:25, 52:18, 64:8, 64:12, 65:22
**corridor** [1] - 59:15
**cost** [2] - 18:8, 18:9
**counsel** [37] - 3:3, 4:25, 8:18, 9:24, 10:2, 11:3, 11:5, 11:16, 12:24, 16:16, 17:12, 17:19, 18:9, 19:8, 27:24, 30:24, 35:19, 40:14, 43:15, 44:12, 46:1, 47:11, 48:23, 55:14, 55:20, 56:8, 57:18, 61:14, 63:15, 64:3, 67:3, 67:16, 68:4, 68:18, 69:11, 70:15
**Counsel** [1] - 20:8
**counsel's** [1] - 42:2
**Count** [4] - 6:9, 9:5, 57:21, 58:5
**couple** [1] - 10:6
**course** [1] - 47:13
**court** [14] - 14:25, 41:3, 56:25, 60:15, 60:18, 60:21, 62:9, 62:15, 63:11, 65:10, 65:17, 65:21, 70:11
**COURT** [194] - 1:1, 3:11, 3:17, 3:19, 3:22, 4:11, 4:15, 4:21, 4:24, 5:6, 5:11, 5:17, 5:20, 6:3, 6:12, 6:15, 9:4, 10:6, 10:10, 10:12, 10:14, 10:18, 10:21, 10:24, 11:2, 11:7, 11:10, 11:13, 11:18, 11:21, 12:1, 12:17, 12:20, 13:9, 13:14, 13:16, 13:22, 14:2, 14:15, 14:22, 15:6, 15:14, 15:16, 16:15, 16:18, 17:18, 17:21, 18:7, 18:13, 18:20, 18:24, 19:6, 19:14,

19:18, 20:8, 20:11, 22:21, 23:8, 23:11, 23:15, 23:19, 23:24, 24:2, 24:8, 24:13, 24:17, 24:23, 25:2, 25:7, 25:13, 25:17, 25:22, 26:1, 26:7, 26:12, 26:15, 26:20, 26:23, 27:3, 27:15, 27:18, 28:3, 28:8, 28:12, 29:24, 31:12, 31:15, 31:17, 34:13, 34:22, 35:21, 36:5, 36:12, 36:22, 37:16, 38:6, 38:13, 39:5, 39:22, 40:7, 40:18, 40:25, 41:9, 41:14, 41:23, 42:5, 42:11, 42:25, 44:1, 44:22, 45:6, 45:12, 45:15, 46:1, 46:10, 46:13, 47:1, 47:9, 48:2, 48:11, 49:19, 49:25, 50:3, 50:6, 50:15, 51:4, 51:11, 51:22, 52:2, 53:2, 53:5, 53:11, 54:6, 54:16, 54:23, 55:12, 55:20, 55:22, 55:24, 56:6, 56:16, 56:19, 56:23, 57:2, 57:6, 57:10, 57:13, 57:17, 57:20, 57:24, 58:12, 58:16, 58:22, 59:2, 59:17, 59:19, 60:13, 61:20, 61:22, 62:3, 62:7, 62:13, 63:5, 63:20, 64:3, 64:11, 64:16, 64:25, 65:9, 65:12, 65:19, 65:25, 66:4, 66:8, 66:18, 66:24, 67:2, 67:7, 67:9, 67:12, 67:14, 68:7, 68:11, 68:15, 68:18, 68:23, 69:3, 69:10, 69:21, 70:1, 70:4, 70:15, 70:18, 71:2
**Court** [35] - 2:3, 2:3, 9:16, 12:24, 13:3, 14:24, 16:8, 16:11, 17:1, 17:25, 29:5, 29:10, 30:7, 30:11, 30:20, 33:8, 34:7, 34:23, 34:25, 37:8, 40:11, 41:5, 41:9, 41:11, 41:18, 44:6, 50:16, 52:14, 52:18, 55:25, 56:21, 58:4, 70:8, 72:12, 72:13
**Court's** [1] - 30:5
**courtesy** [1] - 64:13

**courthouse** [3] - 4:16, 41:16, 52:20
**COURTROOM** [17] - 3:1, 4:23, 5:24, 6:4, 6:8, 58:11, 58:14, 58:18, 58:25, 62:11, 63:3, 68:14, 69:1, 69:24, 70:2, 70:5, 70:14
**courtroom** [4] - 12:23, 13:2, 13:6
**cover** [3] - 5:7, 19:11, 19:19
**covered** [2] - 19:20, 62:2
**covert** [1] - 43:11
**create** [1] - 8:13
**credibility** [1] - 69:14
**credit** [7] - 29:19, 51:4, 52:4, 52:12, 52:24, 53:7
**credits** [1] - 37:8
**crime** [3] - 12:13, 29:8, 54:11
**crimes** [1] - 53:21
**criminal** [17] - 3:1, 16:4, 29:18, 30:17, 31:19, 32:16, 32:17, 32:25, 39:17, 39:22, 41:4, 44:22, 46:16, 53:15, 53:21, 53:24, 54:9
**Criminal** [7] - 1:3, 3:8, 6:8, 33:1, 47:11, 47:17, 55:24
**cross** [1] - 13:20
**cross-examine** [1] - 13:20
**CRR** [3] - 2:2, 72:3, 72:12

# D

**D.C** [23] - 1:6, 1:16, 1:20, 2:5, 13:4, 38:24, 44:17, 44:18, 45:23, 52:14, 56:1, 59:22, 62:5, 62:12, 62:13, 63:11, 63:23, 63:25, 64:4, 64:5, 65:7, 65:9, 72:14
**danger** [1] - 42:21
**dangerous** [1] - 62:17
**data** [1] - 26:8
**date** [2] - 10:10, 69:2
**dated** [2] - 4:6, 5:12
**Dated** [1] - 72:10
**dates** [6] - 21:4,

24:19, 26:2, 63:9,
67:15, 68:16
**DAVIS** [3] - 1:14,
3:13, 69:18
**Davis** [1] - 3:6
**days** [6] - 17:22,
18:4, 37:10, 66:15,
66:20
**deal** [1] - 42:15
**debriefing** [1] - 54:2
**December** [8] - 68:5,
68:8, 68:14, 68:15,
68:23, 69:6, 70:11,
70:20
**decide** [4] - 33:17,
33:22, 34:16, 43:6
**decided** [2] - 29:10,
36:6
**decision** [11] - 7:5,
9:16, 13:1, 14:10,
14:12, 27:12, 36:16,
36:19, 37:9, 41:19,
57:25
**declarations** [1] -
54:17
**deductions** [1] -
56:13
**defeat** [2] - 22:25,
27:4
**Defendant** [15] - 1:7,
5:25, 6:2, 6:5, 6:10,
6:14, 19:6, 20:4,
22:25, 23:7, 27:19,
57:24, 58:20, 69:12,
69:18
**DEFENDANT** [132] -
1:21, 3:21, 4:14, 6:7,
6:11, 9:3, 10:5, 10:9,
10:11, 10:13, 10:17,
10:19, 10:22, 11:1,
11:5, 11:9, 11:12,
11:17, 11:20, 11:25,
12:16, 12:19, 13:8,
13:13, 13:15, 13:21,
14:1, 14:14, 14:21,
15:5, 15:13, 15:15,
16:14, 16:17, 17:17,
17:20, 18:6, 18:12,
18:19, 18:23, 23:10,
23:14, 23:18, 23:23,
24:1, 24:7, 24:12,
24:16, 24:22, 25:1,
25:6, 25:12, 25:16,
25:21, 25:25, 26:6,
26:11, 26:14, 26:19,
26:22, 27:2, 27:14,
27:17, 28:11, 29:23,
31:11, 31:14, 31:16,
34:12, 34:21, 35:20,
36:4, 36:11, 36:21,

37:15, 38:5, 38:12,
39:4, 39:21, 40:6,
40:17, 40:24, 41:8,
41:13, 41:22, 42:4,
42:10, 42:24, 43:25,
44:21, 45:5, 45:14,
45:25, 46:12, 46:25,
47:8, 48:1, 48:10,
49:18, 49:24, 50:2,
50:5, 50:14, 51:3,
51:21, 52:1, 53:1,
53:4, 53:10, 54:5,
54:15, 54:22, 55:11,
55:23, 56:5, 56:15,
56:18, 56:22, 57:1,
57:5, 57:9, 57:12,
57:16, 57:19, 57:23,
62:23, 67:5, 67:8,
67:10, 67:13, 70:13,
70:25
**Defense** [2] - 20:15,
23:21
**defense** [9] - 13:25,
25:23, 27:23, 28:1,
28:6, 35:5, 46:22,
68:18, 70:15
**degree** [3] - 10:17,
44:8, 48:6
**delayed** [1] - 48:3
**delivered** [1] - 63:2
**denied** [1] - 49:13
**deny** [1] - 39:11
**depart** [4] - 33:9,
34:7, 34:18
**DEPARTMENT** [1] -
1:15
**department** [3] -
30:15, 31:4
**Department** [5] -
20:15, 23:21, 34:2,
43:4, 56:1
**departure** [5] - 34:5,
36:15, 43:18, 45:1,
55:6
**departures** [2] -
33:4, 36:8, 40:3
**deprive** [1] - 37:18
**DEPUTY** [17] - 3:1,
4:23, 5:24, 6:4, 6:8,
58:11, 58:14, 58:18,
58:25, 62:11, 63:3,
68:14, 69:1, 69:24,
70:2, 70:5, 70:14
**despite** [2] - 21:8,
41:19
**destructive** [2] -
62:17, 65:24
**detail** [1] - 35:2
**detailed** [1] - 22:19
**detained** [2] - 9:16,

42:20
**determine** [3] - 13:5,
35:22, 48:6
**determined** [1] -
17:2
**deterrence** [2] -
30:10
**device** [1] - 65:24
**devices** [1] - 62:17
**different** [15] - 6:24,
28:13, 28:18, 31:19,
31:21, 35:4, 36:1,
37:3, 37:25, 40:8,
40:15, 40:21, 47:20,
60:10
**differently** [2] - 6:21,
6:24
**direct** [2] - 24:13,
48:15
**directed** [4] - 20:20,
20:24, 24:4, 43:14
**directly** [1] - 53:23
**disagree** [4] - 23:9,
31:1, 31:2, 50:9
**disclosure** [2] - 47:5,
52:8
**discovered** [1] -
48:21
**discovery** [1] - 47:4
**discuss** [9] - 5:21,
11:21, 11:22, 28:13,
28:14, 38:16, 46:3,
46:7, 66:20
**discussed** [13] -
11:15, 16:15, 17:18,
28:1, 28:6, 30:4,
35:14, 35:18, 38:18,
47:10, 51:1, 54:3,
63:6
**discussing** [3] -
8:22, 11:8, 43:18
**discussion** [3] -
46:2, 53:2, 68:4
**discussions** [5] -
9:23, 47:13, 49:22,
51:8, 69:5
**disputes** [1] - 26:7
**district** [1] - 72:13
**DISTRICT** [4] - 1:1,
1:1, 1:11, 1:18
**District** [7] - 2:3, 2:4,
12:22, 19:13, 38:25,
45:21, 72:13
**disturbance** [1] -
11:11
**Division** [1] - 56:1
**DIVISION** [1] - 1:15
**Divisions** [1] - 55:25
**divisions** [1] - 56:2
**doctor** [1] - 10:17

**documents** [2] - 5:8,
62:20
**done** [6] - 18:4,
35:10, 45:20, 45:23,
61:4, 67:18
**Dorothy** [7] - 4:21,
5:22, 61:13, 62:10,
63:7, 68:25, 69:23
**doubt** [3] - 8:4,
14:18, 54:10
**down** [2] - 32:23,
47:10
**downward** [3] - 33:9,
36:14, 40:3
**drawn** [1] - 34:24
**driving** [1] - 59:16
**drug** [1] - 62:18
**drugs** [3] - 10:25,
63:15, 66:1
**dry** [1] - 41:15
**Dubai** [4] - 20:5,
20:17, 23:17, 23:25
**due** [10] - 21:24,
22:3, 22:7, 22:10,
22:13, 23:3, 26:3,
26:16, 27:10, 50:15
**duly** [1] - 6:14
**during** [4] - 7:7,
23:15, 44:12, 44:23
**duty** [1] - 23:6

## E

**early** [5] - 20:14,
20:23, 24:10, 32:12,
68:5
**easier** [2] - 5:11,
69:4
**easiest** [1] - 7:20
**education** [3] -
10:16, 30:17, 67:10
**EDWARDS** [2] - 2:2,
72:3
**Edwards** [1] - 72:12
**efficient** [1] - 52:24
**efforts** [1] - 42:5
**either** [15] - 4:5, 7:6,
7:10, 8:17, 17:10,
29:7, 31:4, 31:23,
33:9, 34:2, 40:20,
40:22, 45:7, 48:25,
59:16
**element** [2] - 23:3,
23:5
**elements** [7] - 7:23,
8:2, 8:6, 19:22, 22:22,
22:23, 27:20
**Eleventh** [2] - 1:19,
1:23

**elsewhere** [3] -
44:17, 44:18, 45:23
**email** [2] - 63:19,
64:22
**emailed** [1] - 58:19
**Emirates** [2] - 20:5,
20:17
**emotional** [1] - 11:11
**employed** [1] - 67:12
**end** [9] - 5:21, 6:16,
7:17, 8:20, 9:16, 12:3,
42:8, 42:15, 53:17
**enforcement** [7] -
41:4, 43:5, 43:12,
43:14, 44:11, 56:2,
56:9
**engage** [8] - 39:11,
39:12, 39:16, 42:17,
43:20, 44:9, 53:15,
55:7
**engaged** [1] - 39:14
**ensure** [1] - 12:24
**entail** [2] - 50:12,
61:18
**enter** [1] - 19:12
**entered** [3] - 5:5,
17:23, 48:22
**entering** [4] - 6:17,
56:17, 57:10, 57:13
**entities** [1] - 60:10
**entitled** [1] - 45:1
**ESQ** [4] - 1:14, 1:14,
1:17, 1:21
**essence** [1] - 3:24
**estimate** [2] - 36:1,
40:14
**estimated** [2] -
40:19, 41:10
**et** [7] - 8:12, 25:4,
44:2, 63:14, 63:15,
64:23, 66:1
**evade** [2] - 22:24,
27:4
**evaded** [1] - 22:12
**evaluate** [1] - 53:8
**evasion** [6] - 6:9,
9:5, 22:16, 27:21,
57:21, 58:6
**eventually** [1] -
43:11
**evidence** [13] - 8:3,
8:5, 13:1, 13:5, 14:4,
14:5, 14:8, 18:25,
19:23, 23:12, 47:24,
48:21, 54:8
**Evidence** [2] - 47:12,
47:18
**evidently** [1] - 35:16
**evolving** [1] - 68:12
**ex** [5] - 42:19, 67:24,

69:8, 69:9, 69:11
**exactly** [1] - 39:7
**examinations** [1] - 43:11
**examine** [1] - 13:20
**examples** [1] - 48:18
**except** [1] - 17:3
**exceptions** [3] - 17:3, 17:21, 48:20
**excess** [2] - 20:24, 24:10
**excused** [2] - 70:18, 71:2
**execution** [2] - 38:25, 41:1
**executive** [2] - 20:15, 23:21
**expenses** [10] - 21:9, 21:12, 21:19, 22:15, 22:20, 25:4, 25:10, 25:24, 26:21, 27:6
**expires** [1] - 70:21
**explain** [4] - 6:21, 6:23, 15:12, 35:2
**explained** [1] - 18:15
**extend** [1] - 59:11
**extension** [1] - 67:19
**extent** [2] - 17:3, 59:13
**EZRA** [1] - 1:14
**Ezra** [1] - 3:5

**F**

**facilitate** [1] - 51:9
**fact** [6] - 8:9, 32:11, 32:12, 38:20, 46:3, 46:7
**factors** [4] - 30:7, 31:21, 33:6, 41:11
**facts** [1] - 35:24
**factual** [2] - 7:19, 58:3
**factually** [1] - 31:1
**fail** [2] - 53:14, 55:2
**failing** [2] - 21:17, 25:19
**fair** [3] - 8:8, 12:25, 30:12
**fairly** [3] - 7:21, 66:14, 67:21
**fall** [3] - 15:22, 16:4, 16:9
**false** [21] - 9:1, 21:3, 21:10, 21:12, 21:16, 21:18, 22:14, 22:17, 22:18, 22:20, 24:18, 25:8, 25:13, 25:18, 25:23, 26:17, 26:24,

27:1, 27:9, 41:4, 54:16
**far** [4] - 10:15, 31:10, 34:11, 66:16
**faster** [1] - 66:21
**favorable** [1] - 16:11
**Federal** [3] - 47:11, 47:18
**federal** [6] - 16:19, 21:3, 24:18, 38:9, 43:4, 54:11
**felon** [1] - 38:9
**felony** [3] - 4:17, 12:5, 37:17
**few** [2] - 17:21, 56:6
**Fifth** [1] - 1:23
**figure** [2] - 50:8, 51:23
**file** [12] - 24:18, 25:4, 32:11, 34:6, 34:18, 36:16, 36:17, 42:18, 49:2, 49:8, 49:12, 67:23
**filed** [17] - 9:9, 17:22, 18:8, 21:3, 21:6, 21:16, 21:22, 22:1, 22:5, 24:24, 24:25, 25:18, 26:25, 36:18, 69:8, 69:9
**filing** [3] - 22:18, 27:8, 36:14
**fill** [2] - 58:24, 58:25
**final** [1] - 36:19
**finality** [1] - 48:19
**finances** [3] - 30:18, 44:4, 44:7
**financial** [5] - 29:9, 44:2, 50:19, 52:8, 53:6
**findings** [1] - 35:10
**fine** [5] - 16:24, 29:1, 33:2, 66:5, 68:21
**finish** [1] - 33:20
**firearm** [5] - 38:7, 38:10, 62:17, 63:14, 65:24
**firearms** [1] - 66:1
**first** [3] - 20:6, 23:20, 28:3
**five** [1] - 28:25
**flee** [1] - 42:22
**Floor** [2] - 1:19, 1:23
**follow** [5] - 9:18, 38:15, 42:1, 55:8, 64:13
**following** [3] - 29:8, 31:10, 64:7
**follows** [1] - 21:21
**FOR** [5] - 1:1, 1:14, 1:18, 1:21, 2:1

**force** [1] - 36:17
**forced** [2] - 14:7, 56:16
**forego** [1] - 47:4
**foregoing** [1] - 72:4
**forfeiture** [1] - 16:24
**form** [3] - 19:23, 52:9, 58:24
**formal** [2] - 6:2, 6:5
**forth** [1] - 70:8
**forward** [4] - 14:3, 14:23, 31:8, 50:23
**four** [2] - 65:8, 65:9
**Fourth** [1] - 1:19
**framework** [3] - 8:22, 28:15, 33:3
**frankly** [3] - 7:20, 37:22, 52:24
**fraud** [1] - 39:5
**fraudulent** [7] - 21:3, 21:16, 22:18, 24:18, 25:18, 27:1, 27:9
**free** [5] - 53:19, 53:23, 55:3, 57:11, 58:2
**frequently** [1] - 59:7
**Friday** [1] - 68:20
**FRIEDMAN** [1] - 1:6
**Friedman** [36] - 3:2, 3:15, 3:16, 3:20, 4:11, 4:25, 5:3, 5:14, 5:18, 6:15, 19:7, 19:11, 19:25, 20:3, 20:6, 20:14, 20:20, 20:22, 20:24, 21:3, 21:9, 21:16, 22:12, 22:16, 23:8, 46:11, 51:7, 55:14, 55:22, 57:20, 58:5, 59:5, 62:25, 67:3, 67:4, 68:18
**Friedman's** [1] - 20:18
**front** [4] - 5:8, 15:14, 28:9, 38:14
**fulfill** [3] - 53:14, 55:3, 59:14
**full** [6] - 11:6, 27:7, 29:21, 50:24, 66:14, 72:5
**fully** [7] - 11:15, 34:15, 43:2, 43:13, 44:16, 53:20, 57:24
**future** [1] - 66:16

**G**

**gain** [2] - 29:2, 29:3
**General** [1] - 3:9
**generally** [5] - 18:3,

29:13, 46:14, 47:18, 66:11
**given** [4] - 29:4, 37:5, 52:12, 63:1
**glad** [1] - 19:16
**Goemaat** [1] - 3:6
**GOEMAAT** [4] - 1:17, 3:12, 69:8, 71:1
**good-time** [1] - 37:8
**government** [2] - 55:18, 60:10
**GOVERNMENT** [1] - 1:14
**Government** [40] - 3:4, 5:20, 7:19, 8:4, 9:8, 9:13, 9:22, 9:24, 10:1, 12:11, 12:24, 18:25, 19:21, 23:12, 27:19, 30:24, 32:10, 33:16, 34:6, 35:6, 35:24, 36:13, 39:15, 42:18, 43:10, 43:15, 43:17, 43:23, 44:11, 44:19, 44:25, 46:5, 46:15, 48:4, 54:7, 55:14, 60:20, 66:10, 67:22, 70:16
**Government's** [8] - 4:9, 14:17, 42:1, 53:18, 53:22, 55:3, 56:21, 59:17
**Government-administered** [1] - 43:10
**grand** [6] - 12:7, 12:8, 12:10, 12:11, 12:15, 44:17
**GRAND** [1] - 1:22
**Grand** [1] - 3:15
**grants** [1] - 34:7
**great** [1] - 63:20
**grounds** [5] - 18:17, 29:11, 34:18, 45:22, 49:8
**guaranteed** [1] - 56:11
**guess** [1] - 58:20
**guideline** [12] - 17:5, 33:7, 34:9, 35:8, 35:22, 36:6, 39:6, 39:24, 41:10, 41:19, 41:25, 49:7
**guidelines** [12] - 28:16, 29:15, 30:22, 31:18, 32:3, 33:4, 34:22, 35:2, 35:11, 35:15, 49:4
**guilt** [4] - 13:5, 14:8, 14:12, 14:18
**guilty** [36] - 5:4, 6:11,

7:23, 8:3, 8:6, 12:20, 14:16, 15:7, 15:20, 16:1, 16:2, 18:13, 18:14, 18:20, 27:21, 37:17, 38:18, 39:6, 39:13, 42:5, 43:22, 45:2, 47:6, 53:20, 54:20, 56:11, 56:17, 56:24, 57:4, 57:10, 57:13, 57:14, 57:22, 57:23, 58:5

**H**

**habeus** [1] - 48:18
**half** [2] - 20:6, 23:20
**hand** [1] - 70:6
**handed** [1] - 62:21
**handled** [1] - 64:15
**hard** [1] - 35:10
**headquartered** [3] - 20:16, 23:25
**hear** [4] - 6:23, 10:1, 70:19
**heard** [1] - 57:8
**hearing** [5] - 7:7, 66:11, 67:21, 68:1, 70:21
**held** [1] - 14:11
**help** [1] - 15:1
**helpful** [2] - 34:15, 58:22
**hereby** [1] - 72:3
**higher** [1] - 14:24
**highest** [1] - 10:16
**History** [1] - 33:1
**history** [6] - 30:18, 32:16, 32:17, 32:25, 39:22
**hold** [1] - 37:19
**HOLMAN** [1] - 2:1
**Holman** [1] - 64:8
**honest** [1] - 33:21
**Honor** [161] - 3:5, 3:12, 3:13, 3:14, 3:18, 3:21, 4:10, 4:14, 4:20, 5:2, 5:14, 5:15, 7:4, 9:3, 10:5, 10:9, 10:19, 11:1, 11:9, 11:12, 11:17, 11:20, 11:25, 12:16, 12:19, 13:8, 13:13, 13:15, 13:21, 14:1, 14:14, 14:21, 15:5, 15:13, 15:15, 16:14, 16:17, 17:17, 17:20, 18:6, 18:12, 18:19, 18:23, 19:5, 19:9, 19:10, 19:17, 20:2, 23:10, 23:14,

23:18, 23:23, 24:1, 24:7, 24:12, 24:16, 24:22, 25:1, 25:6, 25:12, 25:16, 25:21, 25:25, 26:6, 26:11, 26:14, 26:19, 26:22, 27:2, 27:14, 27:17, 27:25, 28:11, 29:23, 31:16, 34:12, 34:21, 35:20, 36:4, 36:11, 36:21, 37:15, 38:5, 38:12, 39:4, 39:21, 40:6, 40:17, 40:24, 41:8, 41:13, 41:22, 42:4, 42:10, 42:24, 43:25, 44:21, 45:5, 45:14, 45:25, 46:3, 46:12, 46:25, 47:8, 48:1, 48:10, 49:18, 49:24, 50:2, 50:5, 50:14, 51:3, 51:7, 51:21, 52:1, 53:1, 53:4, 53:10, 54:5, 54:15, 54:22, 55:11, 55:19, 55:21, 55:23, 56:5, 56:15, 56:18, 56:22, 57:1, 57:5, 57:9, 57:12, 57:16, 57:19, 57:23, 59:3, 59:11, 59:18, 60:12, 61:16, 62:1, 62:23, 62:24, 64:9, 66:17, 66:23, 67:1, 67:5, 67:8, 67:13, 68:3, 68:17, 68:22, 69:9, 69:18, 70:17, 70:24, 70:25, 71:1
**HONORABLE** [1] - 1:10
**hours** [1] - 10:25
**house** [1] - 59:9

**I**

**Iason** [1] - 3:15
**IASON** [1] - 1:22
**idea** [2] - 33:10, 64:23
**identified** [1] - 43:15
**identify** [2] - 3:3, 43:5
**illegally** [1] - 62:18
**illness** [1] - 11:11
**immediately** [3] - 50:16, 52:8, 63:24
**impartial** [1] - 12:25
**impeach** [2] - 47:21, 47:24
**import** [1] - 33:13
**important** [5] - 8:10,

29:16, 36:14, 55:16, 69:12
**importantly** [3] - 30:21, 41:23, 47:9
**impose** [6] - 29:12, 36:7, 41:25, 50:16, 57:3, 57:7
**imposed** [1] - 35:25
**imprisonment** [1] - 16:24
**include** [4] - 43:8, 51:12, 55:5, 59:12
**included** [6] - 20:19, 22:19, 24:9, 25:23, 26:20, 36:2
**including** [10] - 15:19, 15:25, 16:23, 20:23, 21:18, 43:18, 44:25, 53:25, 56:8, 65:1
**income** [20] - 21:3, 21:9, 21:16, 21:17, 21:18, 21:23, 22:9, 22:18, 22:19, 24:19, 25:3, 25:8, 25:19, 25:20, 25:22, 26:2, 26:20, 27:6, 27:7, 27:10
**incomplete** [4] - 21:10, 22:17, 25:9, 26:24
**increase** [1] - 41:5
**incriminate** [1] - 14:7
**incriminating** [1] - 49:19
**incur** [1] - 37:10
**independent** [1] - 41:19
**indicate** [4] - 14:9, 31:6, 38:23, 46:1
**indicated** [2] - 30:2, 65:4
**indicates** [2] - 39:9, 55:2
**indicating** [1] - 9:17
**indicted** [1] - 12:6
**indictment** [5] - 5:14, 12:1, 12:8, 12:10, 69:16
**indirect** [1] - 48:15
**indirectly** [1] - 53:23
**individuals** [1] - 4:5
**ineffective** [3] - 17:11, 17:12, 48:23
**infer** [1] - 14:11
**information** [38] - 4:19, 5:1, 5:3, 5:22, 6:3, 6:4, 6:6, 8:9, 9:5, 11:14, 12:5, 21:10, 21:12, 21:19, 22:14,

22:18, 22:20, 25:9, 25:14, 25:24, 26:18, 26:24, 29:9, 30:8, 30:16, 30:17, 30:20, 33:24, 34:14, 44:4, 47:5, 49:20, 51:23, 53:25, 54:1, 57:21, 58:5, 64:3
**informed** [1] - 52:16
**infractions** [1] - 37:10
**innocence** [1] - 13:5
**innocent** [1] - 14:17
**inquiry** [1] - 8:12
**insofar** [2] - 15:17, 15:23
**Inspector** [1] - 3:9
**instances** [2] - 33:8, 37:24
**instead** [5] - 7:21, 15:11, 19:3, 45:23, 48:14
**instructions** [1] - 13:3
**intent** [1] - 23:7
**intentional** [1] - 23:6
**intentionally** [1] - 27:15
**interest** [4] - 50:7, 50:8, 50:11, 51:15
**Internal** [1] - 21:20
**international** [2] - 60:16, 62:20
**internationally** [1] - 60:15
**interrupt** [1] - 19:17
**interviewed** [2] - 42:13, 44:10
**interviews** [2] - 44:13
**Investigations** [1] - 3:8
**involved** [3] - 28:16, 32:6, 41:2
**IRS** [7] - 3:8, 45:8, 50:23, 51:13, 51:23, 52:4, 52:16
**issue** [9] - 45:1, 45:20, 46:11, 47:15, 49:9, 49:10, 60:24, 60:25, 61:8
**issued** [1] - 42:20
**issues** [6] - 8:13, 17:14, 30:19, 35:7, 50:6
**it'll** [1] - 50:10
**itself** [2] - 32:5, 38:13

**J**

**jail** [7] - 28:25, 29:4, 33:1, 36:25, 37:1, 37:5, 50:18
**JEREMY** [1] - 1:21
**Jeremy** [1] - 3:14
**Jersey** [6] - 59:7, 59:10, 59:12, 61:17, 63:8, 65:5
**job** [1] - 30:18
**jointly** [2] - 21:6, 24:24
**JUDGE** [1] - 1:11
**Judge** [3] - 58:11, 63:3, 69:2
**judges** [2] - 14:25, 32:2
**judgment** [1] - 17:22
**judgments** [1] - 48:19
**July** [2] - 4:6, 5:12
**juris** [1] - 10:17
**jurors** [1] - 12:11
**jury** [12] - 5:16, 12:7, 12:8, 12:10, 12:15, 12:21, 12:25, 13:2, 13:7, 14:10, 37:20, 44:17
**Justice** [3] - 34:3, 43:4, 56:1
**justice** [4] - 39:16, 41:3, 53:22, 54:18
**JUSTICE** [1] - 1:15

**K**

**keep** [1] - 50:20
**kept** [1] - 53:17
**kind** [7] - 10:24, 32:19, 38:7, 43:18, 44:5, 51:24, 60:16
**kinds** [6] - 29:10, 30:11, 33:18, 35:11, 39:12, 51:15
**knowingly** [2] - 6:17, 22:12
**knowledge** [1] - 65:16
**known** [1] - 23:6
**KOLLAR** [1] - 1:10
**KOLLAR-KOTELLY** [1] - 1:10
**KOTELLY** [1] - 1:10

**L**

**lack** [1] - 49:16

**language** [1] - 15:23
**last** [7] - 10:25, 38:16, 55:2, 56:6, 60:21, 61:4, 65:3
**law** [13] - 10:17, 14:16, 15:17, 15:24, 16:19, 28:22, 41:4, 43:5, 43:11, 43:14, 44:11, 56:2, 56:8
**lawful** [1] - 44:9
**lawyer** [7] - 6:19, 13:11, 15:1, 35:23, 36:17, 56:21
**lawyers** [2] - 44:11, 57:8
**least** [3] - 5:22, 12:12, 35:1
**leave** [1] - 60:8
**leaving** [2] - 58:8, 59:22
**leeway** [1] - 67:15
**left** [2] - 32:23, 39:19
**legal** [2] - 23:6, 45:22
**length** [2] - 42:6, 60:4
**LESLIE** [1] - 1:17
**Leslie** [1] - 3:6
**less** [3] - 34:10, 36:8, 61:7
**lesser** [1] - 44:8
**letter** [18] - 4:6, 7:14, 8:7, 9:23, 11:3, 11:5, 19:15, 28:8, 28:14, 28:17, 33:18, 36:2, 38:13, 39:7, 40:13, 40:19, 55:15, 56:25
**level** [5] - 10:16, 32:14, 32:22, 32:24, 41:6
**liabilities** [3] - 51:12, 51:13, 51:19
**license** [1] - 38:8
**lighter** [1] - 56:12
**likely** [1] - 42:22
**limit** [1] - 43:9
**limitations** [4] - 46:13, 46:17, 46:21, 46:22
**limited** [2] - 15:19, 16:23
**limits** [1] - 59:11
**Lisa** [1] - 72:12
**LISA** [2] - 2:2, 72:3
**listed** [1] - 21:4
**live** [2] - 37:21, 38:8
**lived** [1] - 20:4
**lives** [1] - 59:6
**living** [3] - 23:16, 45:19, 59:8
**local** [3] - 43:5,

54:11, 61:18
**locally** [3] - 61:20, 63:6, 65:5
**look** [7] - 15:10, 30:5, 30:25, 32:17, 32:22, 66:4, 68:7
**looking** [1] - 66:9
**looks** [2] - 68:11, 68:12
**Los** [1] - 10:22
**lose** [1] - 37:24
**loss** [3] - 21:20, 29:2, 29:3
**lower** [3] - 49:5, 49:6, 54:13

## M

**mailing** [1] - 52:23
**maintain** [1] - 45:7
**manner** [1] - 17:2
**Marshals** [1] - 69:19
**masks** [2] - 41:14, 41:15
**materials** [2] - 53:25, 54:1
**matter** [3] - 9:9, 11:22, 42:22
**matters** [2] - 43:6, 66:15
**maximum** [6] - 17:4, 28:23, 28:25, 29:1, 30:4, 41:20
**maximums** [2] - 28:15, 28:22
**mean** [2] - 8:10, 12:10
**means** [5] - 12:6, 15:17, 15:24, 16:2
**medical** [2] - 30:19, 62:19
**medication** [1] - 10:25
**meet** [1] - 60:10
**meeting** [1] - 62:8
**meets** [4] - 7:22, 8:2, 8:5, 27:20
**mental** [1] - 11:11
**mentioned** [2] - 22:13, 23:4
**mid-2013** [3] - 20:13, 20:18, 24:2
**might** [3] - 33:19, 55:5, 59:4
**mind** [1] - 7:4
**minute** [3] - 30:23, 60:21, 61:4
**misleading** [2] - 23:1, 27:5

**missed** [2] - 10:12, 28:3
**misunderstanding** [1] - 8:19
**modify** [1] - 48:17
**moment** [1] - 59:20
**monetary** [1] - 29:3
**money** [4] - 32:6, 50:20, 52:19
**monthly** [1] - 50:17
**months** [1] - 33:2
**morning** [7] - 3:5, 3:11, 3:12, 3:13, 3:17, 3:18, 66:25
**Morvillo** [1] - 3:14
**MORVILLO** [1] - 1:22
**most** [2] - 5:7, 66:20
**mostly** [2] - 21:18, 25:22
**motion** [12] - 32:11, 34:5, 34:7, 34:19, 36:14, 36:16, 36:18, 48:20, 49:3, 49:8, 49:12, 49:13
**move** [6] - 28:9, 32:5, 31:13, 46:3, 51:7, 55:19, 55:21, 59:3, 59:18, 60:12, 61:16, 61:21, 61:25, 62:4, 62:24, 66:16, 66:22, 67:1, 68:3, 68:10, 68:16, 68:21, 70:17, 70:24
**movies** [1] - 36:24
**moving** [2] - 16:18, 39:24
**MR** [39] - 3:5, 3:14, 3:18, 4:10, 4:20, 5:2, 5:10, 5:12, 5:18, 19:5, 19:9, 19:17, 20:2, 20:13, 22:23, 27:25, 28:5, 31:13, 46:3, 51:7, 55:19, 55:21, 59:3, 59:18, 60:12, 61:16, 61:21, 61:25, 62:4, 62:24, 66:16, 66:22, 67:1, 68:3, 68:10, 68:16, 68:21, 70:17, 70:24
**MS** [5] - 3:12, 3:13, 69:8, 69:18, 71:1
**muted** [1] - 4:24, 31:13, 31:14

## N

**names** [1] - 3:24
**Nanette** [1] - 3:6
**NANETTE** [1] - 1:14
**narcotic** [2] - 62:18, 63:14
**narrow** [2] - 18:3, 18:17, 33:8, 33:10
**narrowly** [1] - 34:24
**nature** [4] - 48:5,

56:13, 58:1, 66:18
**necessarily** [2] - 17:6, 43:9
**need** [25] - 4:21, 6:16, 7:6, 7:10, 7:22, 8:3, 9:18, 28:7, 41:14, 52:8, 60:5, 61:3, 61:9, 61:23, 62:14, 64:13, 65:1, 65:14, 65:17, 65:19, 65:20, 65:21, 67:18, 69:20, 70:2
**needs** [19] - 5:6, 8:18, 19:19, 27:23, 28:2, 30:9, 52:15, 55:14, 59:23, 60:4, 60:15, 60:17, 60:18, 60:19, 60:20, 63:9, 64:22, 64:23, 69:24
**negotiations** [1] - 56:20
**never** [2] - 37:23, 64:10
**New** [36] - 1:24, 3:16, 19:11, 20:4, 20:5, 23:17, 38:25, 45:18, 45:19, 45:21, 45:23, 46:5, 46:6, 46:9, 59:6, 59:7, 59:8, 59:9, 59:10, 59:12, 61:1, 61:7, 61:17, 62:1, 62:3, 63:7, 63:8, 63:24, 64:6, 64:10, 64:14, 65:4, 65:5
**new** [4] - 29:8, 29:12, 29:13, 29:20
**newly** [1] - 48:21
**next** [3] - 46:13, 47:9, 70:11
**nobody** [1] - 69:5
**none** [1] - 32:21
**Northeast** [1] - 1:16
**Northwest** [3] - 1:19, 2:4, 72:14
**note** [1] - 35:15
**noted** [1] - 62:11
**notes** [1] - 72:5
**nothing** [1] - 50:23
**notice** [2] - 17:21, 42:19
**noticed** [1] - 5:20
**notify** [2] - 59:24, 65:17
**notwithstanding** [1] - 17:9
**November** [3] - 4:16, 67:20, 72:10
**null** [1] - 46:19
**number** [2] - 32:4, 32:7
**numbers** [2] - 31:20,

32:24

## O

**oath** [1] - 8:23
**object** [3] - 31:1, 35:24, 40:10
**objection** [4] - 31:5, 31:7, 31:8, 59:18
**obligations** [9] - 43:17, 43:23, 44:25, 45:3, 53:14, 53:19, 54:18, 55:3, 55:4
**obstructing** [2] - 41:3, 53:22
**obstruction** [2] - 39:16, 54:17
**obtain** [2] - 62:20, 63:21
**obviously** [12] - 17:24, 18:1, 28:20, 35:5, 44:10, 49:9, 54:9, 59:6, 59:15, 62:9, 62:15, 64:25
**occurs** [2] - 42:21, 50:11
**October** [5] - 22:2, 66:22, 66:25, 67:16, 67:23
**OF** [6] - 1:1, 1:3, 1:10, 1:15, 1:18
**off-the-record** [1] - 54:2
**offense** [31] - 3:23, 5:13, 7:21, 7:23, 7:25, 8:2, 9:10, 11:4, 19:3, 19:22, 19:23, 22:22, 22:23, 23:9, 27:20, 29:18, 30:3, 30:10, 30:16, 31:21, 32:2, 32:4, 32:14, 32:22, 32:24, 35:17, 37:17, 41:6, 44:22, 46:16, 57:14
**offenses** [3] - 31:19, 31:22, 32:18
**offer** [1] - 11:23
**OFFICE** [1] - 1:18
**Office** [5] - 34:2, 43:4, 53:7, 54:24, 55:25
**office** [6] - 37:19, 44:5, 56:3, 57:8, 64:15, 64:19
**OFFICER** [11] - 63:18, 63:25, 64:9, 64:12, 64:24, 65:7, 65:11, 65:15, 65:22, 66:2, 66:6

**offices** [1] - 43:3
**official** [3] - 40:8, 40:11, 72:12
**Official** [1] - 2:3
**old** [4] - 10:8, 10:9, 36:24
**omitted** [1] - 22:19
**once** [2] - 33:25, 61:14
**one** [32] - 3:23, 3:25, 4:2, 4:3, 4:4, 13:11, 15:2, 15:19, 18:10, 19:3, 19:9, 26:5, 27:5, 33:13, 34:3, 34:23, 38:6, 38:7, 40:2, 40:9, 40:11, 47:3, 49:9, 58:13, 60:14, 62:22, 63:21, 65:3, 69:15, 69:17
**ones** [1] - 37:11
**opaque** [1] - 69:4
**open** [2] - 56:25, 69:5
**opinion** [1] - 16:11
**opportunity** [2] - 35:24, 44:14
**opposed** [1] - 4:12
**option** [3] - 34:23, 35:9, 35:13
**orally** [2] - 7:7, 31:12
**order** [21] - 5:21, 8:2, 8:6, 12:24, 25:4, 26:15, 48:3, 58:13, 58:16, 58:19, 58:20, 59:14, 60:15, 60:18, 60:21, 64:20, 65:17, 65:21, 66:7, 69:16, 69:20
**ordinarily** [1] - 47:17
**otherwise** [1] - 69:4
**outside** [3] - 41:25, 46:8, 65:20
**overnight** [7] - 60:25, 61:19, 61:22, 62:1, 63:9, 63:10, 65:6
**owe** [1] - 27:10
**owed** [3] - 27:8, 50:4, 52:13
**owing** [11] - 21:25, 22:3, 22:7, 22:11, 22:13, 23:4, 26:3, 26:9, 26:17, 27:11, 50:15
**own** [7] - 13:23, 14:4, 14:8, 37:8, 57:11, 58:2, 67:11

## P

**P.C** [1] - 1:22
**package** [2] - 20:19, 24:3
**page** [1] - 38:15
**Page** [16] - 15:10, 26:1, 38:17, 38:20, 39:8, 39:24, 41:17, 42:11, 42:25, 47:1, 48:12, 50:6, 51:2, 52:3, 53:5, 53:11
**paid** [5] - 21:5, 24:20, 44:7, 45:19, 52:16
**paper** [1] - 15:9
**paragraph** [5] - 8:10, 39:8, 40:2, 41:24, 47:9
**Paragraph** [4] - 41:17, 43:1, 43:2, 54:23
**parole** [3] - 36:23, 37:1, 37:6
**part** [10] - 7:8, 7:9, 8:11, 27:13, 28:3, 28:21, 29:16, 37:1, 60:7, 60:9
**parte** [5] - 42:19, 67:24, 69:8, 69:9, 69:11
**participating** [1] - 43:11
**particular** [8] - 24:3, 26:10, 27:23, 35:3, 39:7, 51:16, 52:11, 59:23
**particularly** [2] - 8:15, 66:12
**parties** [2] - 70:18, 71:2
**party** [1] - 40:22
**pass** [1] - 59:16
**passport** [7] - 62:20, 62:21, 63:1, 63:15, 63:18, 63:19, 63:21
**pay** [4] - 18:7, 26:17, 44:3, 51:5
**paying** [1] - 27:7
**payment** [8] - 20:24, 22:25, 24:14, 27:4, 51:10, 52:5, 52:11, 52:12
**payments** [14] - 20:20, 20:21, 20:23, 24:4, 24:5, 24:9, 50:17, 50:22, 51:6, 51:8, 52:10, 52:21, 52:25

**pecuniary** [1] - 29:2
**penalties** [4] - 28:23, 28:24, 38:19, 51:15
**pending** [2] - 5:5, 11:14
**Pennsylvania** [5] - 59:10, 59:12, 61:17, 63:8, 65:5
**people** [1] - 59:8, 66:20
**per** [1] - 35:1
**perfectly** [1] - 62:6
**perform** [2] - 53:14, 55:2
**perhaps** [3] - 66:22, 68:5, 68:10
**period** [9] - 23:16, 29:4, 29:19, 37:5, 44:23, 46:15, 48:3, 48:5, 67:17
**perjury** [3] - 8:25, 53:22, 54:17
**permitted** [2] - 15:17, 15:24
**person** [6] - 4:12, 12:13, 45:7, 52:18, 64:4, 67:18
**personal** [1] - 30:17
**perspective** [1] - 4:9
**phone** [2] - 61:13, 64:22
**physically** [1] - 52:23
**placed** [1] - 8:23
**places** [5] - 37:22, 37:23, 37:24, 59:8, 60:23
**plain** [1] - 52:23
**Plaintiff** [1] - 1:4
**planning** [1] - 60:19
**PLEA** [1] - 1:10
**plea** [54] - 3:19, 4:6, 4:13, 5:4, 5:5, 5:12, 6:17, 7:13, 8:7, 8:21, 9:23, 11:3, 11:22, 14:16, 18:14, 19:13, 19:15, 28:8, 33:18, 36:2, 38:13, 39:13, 39:15, 40:13, 40:19, 41:25, 42:6, 43:22, 45:2, 46:5, 47:6, 47:13, 47:14, 48:22, 51:5, 53:20, 54:20, 55:15, 56:17, 56:24, 56:25, 57:4, 57:10, 57:13, 58:3, 58:4, 60:7, 60:9, 62:6, 62:14, 63:11, 65:10, 66:12
**plead** [5] - 6:10, 12:20, 18:13, 18:20,

57:20
**pleading** [10] - 7:23, 9:7, 12:5, 15:6, 15:20, 27:21, 37:17, 38:18, 39:6, 56:11
**pled** [2] - 32:12, 46:20
**plus** [1] - 66:3
**point** [13] - 7:14, 17:25, 18:2, 18:24, 19:14, 32:11, 39:11, 42:16, 46:19, 48:7, 49:11, 50:11, 67:20
**points** [9] - 31:22, 31:23, 31:24, 32:10, 32:14, 32:20, 35:18, 39:10, 39:18
**polygraph** [1] - 43:10
**portions** [1] - 8:11
**pose** [1] - 42:21
**position** [3] - 48:24, 52:9, 59:17
**possess** [7] - 38:6, 38:9, 62:16, 62:18, 63:14, 65:24
**possible** [1] - 63:22
**post** [1] - 41:6
**post-agreement** [1] - 41:6
**potential** [2] - 40:2, 43:16
**practiced** [2] - 10:18, 10:20
**preclude** [1] - 50:23
**prepare** [3] - 15:1, 58:18, 58:20
**prepared** [2] - 21:5, 24:20, 30:14
**preparer** [1] - 21:5, 24:20, 25:2, 25:8, 26:24
**preparers** [5] - 21:9, 21:10, 22:17, 23:2, 27:5
**preponderance** [1] - 54:8
**prescribed** [1] - 62:19
**present** [10] - 6:24, 13:23, 14:4, 14:5, 14:7, 34:1, 34:4, 34:15, 44:12, 44:15
**presented** [7] - 13:2, 13:6, 19:1, 28:18, 40:8, 63:16, 64:10
**presentence** [4] - 30:14, 30:25, 31:6, 35:23
**presenting** [1] - 55:5

**preserving** [3] - 49:2, 49:7, 49:12
**presumably** [1] - 44:5
**presumed** [1] - 14:16
**PRETRIAL** [12] - 2:1, 63:18, 63:25, 64:9, 64:12, 64:24, 65:7, 65:11, 65:15, 65:22, 66:2, 66:6
**Pretrial** [16] - 42:14, 58:9, 58:23, 59:24, 61:4, 61:12, 61:23, 62:25, 63:2, 63:3, 63:5, 63:17, 63:25, 64:4, 64:21, 65:2
**pretrial** [9] - 9:14, 9:19, 58:13, 62:11, 64:18
**previously** [2] - 5:15, 28:6
**Prisons** [2] - 37:7, 50:19
**probable** [2] - 12:12, 54:12
**probation** [6] - 30:15, 31:4, 37:3, 44:5, 57:8
**Probation** [4] - 40:9, 40:20, 41:5, 60:20
**problem** [6] - 31:15, 59:19, 60:13, 60:22, 69:10, 70:22
**procedure** [1] - 48:19
**Procedure** [2] - 47:11, 47:17
**proceed** [3] - 4:12, 4:17, 6:13
**proceeded** [2] - 46:4, 46:8
**proceeding** [2] - 5:5, 53:24
**Proceedings** [1] - 71:3
**proceedings** [6] - 41:3, 44:18, 47:21, 62:9, 63:11, 72:6
**process** [1] - 11:2
**processed** [1] - 69:19
**produced** [1] - 72:6
**proffer** [3] - 7:19, 7:22, 27:18
**program** [1] - 50:19
**promised** [2] - 56:10, 56:14
**promises** [2] - 56:23, 57:2
**pronounce** [1] - 45:9

**proposed** [1] - 31:3
**prosecuted** [1] - 8:25
**prosecution** [2] - 46:23, 53:21
**prosecutor** [1] - 56:9
**prosecutors** [1] - 62:8
**prove** [2] - 14:18, 54:7
**provide** [10] - 13:3, 25:8, 30:20, 33:21, 34:14, 34:16, 50:7, 52:8, 53:6, 54:16
**provided** [14] - 5:21, 11:14, 21:9, 22:14, 26:18, 26:23, 33:23, 33:25, 36:1, 47:6, 49:20, 53:25, 55:6, 64:4
**providing** [3] - 22:17, 29:9, 43:9
**proviso** [1] - 17:24
**public** [3] - 4:3, 5:4, 37:19
**pull** [1] - 15:9
**punishment** [1] - 30:10
**purpose** [1] - 31:25
**purposes** [2] - 61:18, 62:6
**pursuant** [1] - 54:1
**put** [9] - 7:6, 29:5, 49:6, 60:6, 60:8, 60:11, 61:15, 62:14, 65:19

## Q

**questions** [11] - 6:16, 7:15, 8:20, 8:24, 10:7, 12:23, 21:8, 25:3, 25:8, 43:9, 56:6
**quick** [1] - 67:21
**quicker** [1] - 52:24
**quickly** [1] - 52:3

## R

**raise** [1] - 17:14, 45:22, 46:22, 70:5
**range** [13] - 17:6, 33:1, 33:2, 33:7, 34:8, 34:9, 35:8, 39:24, 40:19, 41:10, 41:20, 42:1, 49:7
**rarely** [3] - 34:24, 35:6, 35:9
**rate** [1] - 50:11

**RDR** [3] - 2:2, 72:3, 72:12
**reached** [2] - 9:25, 56:20
**read** [8] - 7:20, 11:7, 15:11, 19:2, 19:21, 20:9, 26:5, 28:10
**reading** [4] - 5:4, 6:5, 16:18, 20:10
**ready** [1] - 3:20
**realize** [2] - 26:13, 26:16
**really** [2] - 7:2, 60:24
**reason** [2] - 47:14, 67:20
**reasonable** [5] - 8:4, 14:18, 30:12, 41:11, 54:10
**reasons** [2] - 63:11, 65:13
**received** [9] - 5:2, 6:1, 11:10, 20:22, 21:11, 24:8, 25:10, 48:23, 52:5
**recently** [1] - 42:13
**recommendation** [2] - 42:2
**recommendations** [3] - 9:21, 41:18, 42:15
**recommended** [1] - 9:19
**Reconstruction** [1] - 3:10
**record** [8] - 3:4, 4:3, 5:25, 7:6, 49:21, 54:2, 68:1, 69:6
**redacted** [1] - 4:2
**reduced** [1] - 29:17, 32:8, 32:10
**reduction** [1] - 51:10
**refer** [1] - 5:11
**reflect** [1] - 5:25
**reflecting** [1] - 27:9
**refuse** [1] - 43:13
**regarding** [1] - 17:15
**regular** [1] - 45:7
**rehabilitation** [1] - 30:9
**relate** [1] - 47:12
**related** [2] - 49:3, 62:14
**relates** [3] - 40:25, 42:17, 46:14
**relating** [4] - 9:9, 33:6, 44:4, 54:18
**relationship** [1] - 41:11
**release** [14] - 9:17, 16:25, 17:1, 29:5, 29:6, 29:12, 37:4,

42:11, 42:16, 51:23, 58:7, 69:25, 70:3, 70:8
**relevant** [5] - 20:3, 33:12, 34:1, 43:6, 44:19
**relieve** [3] - 43:17, 43:22, 43:23
**relieved** [2] - 44:25, 45:2
**remain** [2] - 9:19, 64:1
**remaining** [1] - 42:18
**report** [22] - 9:15, 21:17, 21:23, 22:2, 22:6, 25:19, 30:14, 30:25, 31:5, 31:6, 35:23, 42:14, 53:7, 58:15, 58:20, 59:1, 63:21, 63:23, 63:24, 64:1, 64:5, 64:5, 69:2
**REPORTED** [1] - 2:2
**REPORTER** [1] - 20:8
**Reporter** [2] - 2:3, 72:12
**reporting** [2] - 29:9, 66:3
**reports** [2] - 58:21, 66:12
**represented** [1] - 13:10
**request** [3] - 5:4, 34:4, 46:7
**requested** [2] - 14:9, 46:6
**requesting** [3] - 9:15, 42:19, 44:4
**require** [4] - 4:4, 13:24, 34:17, 52:22
**required** [4] - 8:11, 34:25, 36:23, 54:7
**requirement** [1] - 30:2
**requirements** [3] - 29:8, 29:9, 51:24
**requires** [1] - 35:10
**rescission** [1] - 40:21
**reserved** [1] - 9:22
**reside** [1] - 38:3
**resident** [1] - 45:18
**resides** [1] - 19:11
**resolve** [1] - 51:13
**respect** [3] - 21:15, 25:17, 59:5
**response** [3] - 4:23, 25:7, 31:11
**responsibility** [8] - 32:8, 32:9, 32:13,

39:10, 39:12, 39:19, 50:19, 56:13
**rest** [1] - 65:25
**restitution** [18] - 9:11, 16:25, 30:1, 30:2, 44:3, 50:1, 50:15, 50:21, 50:22, 50:24, 51:12, 51:17, 51:24, 52:13, 52:15, 52:16, 52:22
**restitution-based** [1] - 50:24
**restrict** [1] - 47:18
**restrictions** [1] - 59:5
**result** [2] - 25:13, 70:9
**resulted** [2] - 25:14, 56:20
**resulting** [1] - 21:13
**retaining** [1] - 44:12
**retroactively** [1] - 49:10
**return** [10] - 21:5, 21:8, 21:10, 21:22, 22:1, 22:5, 22:17, 23:1, 24:20, 26:24
**returns** [9] - 21:4, 21:16, 22:19, 24:19, 24:23, 25:4, 25:19, 26:25, 27:9
**Revenue** [1] - 21:20
**revenue** [1] - 51:9
**reviewed** [2] - 5:3, 11:5
**reviewing** [1] - 11:3
**revocation** [1] - 29:17
**revoke** [1] - 29:12
**rights** [14] - 7:16, 8:16, 12:2, 15:7, 15:12, 18:15, 18:21, 37:18, 37:23, 47:1, 48:12, 49:1, 49:16
**Room** [1] - 2:5
**room** [1] - 3:16
**rule** [1] - 31:8
**Rules** [4] - 47:11, 47:12, 47:17, 47:18
**run** [1] - 46:21

---

**S**

---

**S-O-L-I-N-E** [1] - 45:9
**salary** [9] - 20:19, 20:21, 21:11, 21:18, 24:4, 24:5, 24:9, 25:9, 25:22

**satisfaction** [1] - 51:17
**satisfied** [2] - 11:18, 57:24
**satisfy** [1] - 51:18
**saw** [1] - 9:15
**schedule** [2] - 50:16, 52:11
**school** [1] - 10:15
**scope** [1] - 15:22
**seal** [1] - 67:23
**second** [3] - 23:3, 40:1, 47:3
**Section** [2] - 9:6, 51:2
**see** [2] - 58:13, 63:5
**seek** [2] - 41:5, 51:14
**seeking** [1] - 42:12
**self** [2] - 49:19, 67:12
**self-employed** [1] - 67:12
**self-incriminating** [1] - 49:19
**send** [2] - 52:14, 63:19
**sending** [1] - 62:25
**senior** [2] - 20:14, 23:20
**sense** [1] - 67:25
**sent** [4] - 20:21, 24:5, 52:6, 52:15
**sentence** [43] - 16:23, 17:2, 17:4, 17:5, 17:6, 17:8, 17:11, 17:15, 28:23, 28:24, 28:25, 29:13, 29:17, 29:20, 29:21, 30:13, 32:19, 34:9, 35:4, 35:22, 35:25, 36:7, 36:25, 37:12, 41:11, 41:20, 41:25, 42:6, 44:6, 44:23, 47:3, 48:16, 48:17, 48:25, 55:2, 56:12, 56:14, 57:3, 57:7
**sentenced** [1] - 50:18
**sentences** [3] - 16:20, 16:21, 41:9
**sentencing** [23] - 8:12, 9:22, 10:1, 28:15, 28:16, 29:14, 30:6, 30:22, 31:9, 31:17, 32:3, 33:4, 33:7, 34:8, 35:2, 35:11, 35:15, 42:1, 48:3, 48:8, 49:3, 50:11, 53:16
**sentencings** [2] - 32:2, 67:18

**separately** [3] - 21:7, 24:25, 37:7
**September** [2] - 21:23, 22:6
**seriousness** [2] - 30:9, 31:20
**serve** [5] - 29:18, 29:21, 37:1, 37:6, 37:19
**served** [2] - 29:20, 37:13
**Service** [1] - 21:20
**services** [4] - 9:14, 11:19, 58:13, 64:18
**Services** [8] - 58:10, 59:24, 61:5, 61:12, 61:23, 63:5, 64:22, 65:2
**SERVICES** [12] - 2:1, 63:18, 63:25, 64:9, 64:12, 64:24, 65:7, 65:11, 65:15, 65:22, 66:2, 66:6
**set** [26] - 7:12, 17:1, 18:22, 28:13, 29:13, 30:15, 31:18, 35:11, 35:16, 38:17, 42:16, 44:13, 50:10, 51:16, 51:18, 52:2, 52:15, 58:9, 59:2, 63:13, 64:5, 64:20, 65:14, 66:15, 68:4, 70:8
**sets** [5] - 26:1, 30:6, 43:2, 46:14, 52:13
**setting** [1] - 67:15
**several** [3] - 20:22, 24:8, 52:2
**severance** [2] - 20:23, 24:10, 24:13
**severe** [2] - 36:8
**SHAY** [1] - 2:1
**sheet** [1] - 15:9
**short** [4] - 7:21, 19:3, 69:3, 69:7
**showing** [1] - 41:3
**sides** [1] - 12:25
**sign** [1] - 69:21
**signed** [3] - 5:15, 5:19, 7:24
**signing** [1] - 69:15
**silent** [1] - 10:1
**similar** [1] - 16:9
**single** [2] - 8:8, 8:10
**slightly** [3] - 28:13, 28:18, 68:5
**slower** [1] - 20:12
**slowly** [1] - 20:9
**smoothly** [1] - 66:13
**solemnly** [1] - 70:7
**SOLINE** [1] - 45:11

**Soline** [6] - 3:7, 45:8, 45:9, 45:10, 45:11, 51:9

**someone** [2] - 28:23, 46:16

**sometimes** [5] - 8:13, 23:12, 31:22, 41:16, 69:12

**soon** [1] - 63:22

**sorry** [5] - 19:17, 28:3, 41:15, 59:3, 70:1

**sort** [2] - 59:7, 61:18

**Southern** [1] - 38:25

**special** [2] - 29:24, 38:20

**Special** [4] - 3:7, 3:8, 3:9, 45:8

**SPECIAL** [1] - 45:11

**specific** [6] - 21:8, 23:21, 25:3, 31:23, 49:25, 56:14

**specifically** [3] - 8:18, 45:6, 51:15

**specifics** [1] - 68:2

**specifies** [1] - 16:19

**SPIRO** [16] - 1:14, 3:5, 4:10, 19:5, 20:2, 20:13, 22:23, 55:19, 59:18, 66:16, 66:22, 67:1, 68:3, 68:10, 68:16, 70:24

**Spiro** [1] - 3:5

**split** [2] - 20:25, 24:14

**spoken** [1] - 39:23

**stand** [1] - 47:19

**standard** [3] - 54:9, 54:12, 54:13

**start** [4] - 4:11, 28:20, 32:3, 33:20

**started** [1] - 51:10

**starting** [5] - 3:4, 20:13, 20:18, 24:2, 38:17

**state** [4] - 18:25, 38:8, 43:4, 54:11

**statement** [11] - 3:23, 5:13, 7:20, 7:25, 9:1, 9:10, 11:4, 11:6, 19:2, 19:21, 23:9

**statements** [8] - 41:4, 43:10, 47:12, 47:22, 53:6, 53:24, 54:1, 54:17

**states** [6] - 59:6, 59:20, 59:22, 59:23, 61:14, 63:7

**States** [11] - 2:3, 3:2, 3:7, 20:4, 20:15,

20:22, 24:6, 60:17, 65:18, 65:20, 72:13

**STATES** [4] - 1:1, 1:3, 1:11, 1:18

**status** [1] - 70:21

**statute** [14] - 15:20, 15:22, 16:1, 16:4, 16:10, 16:19, 17:25, 28:22, 29:14, 30:6, 46:13, 46:17, 46:21, 46:22

**statute's** [1] - 16:8

**statutes** [1] - 38:9

**statutory** [6] - 17:4, 28:14, 28:22, 30:4, 38:19, 41:20

**stay** [2] - 61:22, 62:1

**staying** [1] - 60:25

**stays** [2] - 63:8, 65:5

**stenographic** [1] - 72:5

**still** [6] - 4:15, 5:6, 41:15, 43:21, 55:9, 67:17

**Street** [2] - 1:16, 1:19

**strictures** [1] - 17:14

**subject** [2] - 9:9, 53:21

**submit** [1] - 66:6

**submitted** [2] - 58:15, 59:1

**subpoena** [1] - 13:24

**substance** [2] - 30:19, 62:19

**substantial** [5] - 33:14, 34:16, 43:19, 55:1, 55:5

**subtract** [1] - 31:24

**suggested** [1] - 56:10

**suggestion** [1] - 19:2

**summarize** [1] - 15:11

**summarizing** [1] - 7:21

**summary** [1] - 19:23

**summer** [1] - 10:20

**Superior** [1] - 55:25

**supervised** [4] - 16:25, 29:5, 29:12, 37:3

**supervision** [1] - 64:14

**supposed** [1] - 55:8

**surrender** [1] - 63:21

**swear** [4] - 6:12, 69:24, 70:2, 70:7

**sworn** [2] - 6:14, 43:10

**system** [5] - 33:9,

36:24, 37:8, 52:17, 52:19

## T

**talks** [3] - 41:17, 48:12, 54:23

**Tax** [1] - 56:1

**tax** [44] - 6:9, 9:5, 9:10, 21:2, 21:3, 21:5, 21:15, 21:16, 21:20, 21:24, 22:3, 22:7, 22:10, 22:18, 22:25, 23:1, 23:3, 24:17, 24:19, 24:23, 25:2, 25:4, 25:8, 25:17, 25:19, 26:2, 26:3, 26:9, 26:25, 27:4, 27:5, 27:9, 27:21, 39:5, 51:11, 51:13, 51:19, 51:24, 57:21, 58:6

**TAX** [1] - 1:15

**taxable** [2] - 21:17, 25:19

**taxes** [2] - 21:14, 22:13, 25:14, 26:16, 27:8, 27:10, 45:18, 51:14

**telephone** [3] - 45:7, 58:21, 64:2

**Temkin** [1] - 3:14

**TEMKIN** [25] - 1:21, 3:14, 3:18, 4:20, 5:2, 5:10, 5:12, 5:18, 19:9, 19:17, 27:25, 28:5, 31:13, 46:3, 51:7, 55:21, 59:3, 60:12, 61:16, 61:21, 61:25, 62:4, 62:24, 68:21, 70:17

**term** [2] - 16:24, 16:25

**terms** [35] - 7:12, 9:21, 11:3, 18:2, 19:23, 27:5, 28:8, 29:2, 30:5, 30:17, 31:17, 33:10, 33:22, 42:12, 42:14, 42:25, 43:7, 46:10, 49:10, 52:4, 52:10, 52:14, 54:6, 54:23, 54:24, 54:25, 58:7, 59:21, 60:6, 62:16, 64:4, 64:6, 66:19, 67:15, 68:1

**testify** [4] - 13:25, 14:3, 14:5, 44:16

**testimony** [1] - 44:19

**than..** [1] - 28:4

that'll [3] - 44:24, 54:18, 64:16

**THE** [357] - 1:1, 1:10, 1:14, 1:18, 1:21, 3:1, 3:11, 3:17, 3:19, 3:21, 3:22, 4:11, 4:14, 4:15, 4:21, 4:23, 4:24, 5:6, 5:11, 5:17, 5:20, 5:24, 6:3, 6:4, 6:7, 6:8, 6:11, 6:12, 6:15, 9:3, 9:4, 10:5, 10:6, 10:9, 10:10, 10:11, 10:12, 10:13, 10:14, 10:17, 10:18, 10:19, 10:21, 10:22, 10:24, 11:1, 11:2, 11:5, 11:7, 11:9, 11:10, 11:12, 11:13, 11:17, 11:18, 11:20, 11:21, 11:25, 12:1, 12:16, 12:17, 12:19, 12:20, 13:8, 13:9, 13:13, 13:14, 13:15, 13:16, 13:21, 13:22, 14:1, 14:2, 14:14, 14:15, 14:21, 14:22, 15:5, 15:6, 15:13, 15:14, 15:15, 15:16, 16:14, 16:15, 16:17, 16:18, 17:17, 17:18, 17:20, 17:21, 18:6, 18:7, 18:12, 18:13, 18:19, 18:20, 18:23, 18:24, 19:6, 19:14, 19:18, 20:8, 20:11, 22:21, 23:8, 23:10, 23:11, 23:14, 23:15, 23:18, 23:19, 23:23, 23:24, 24:1, 24:2, 24:7, 24:8, 24:12, 24:13, 24:16, 24:17, 24:22, 24:23, 25:1, 25:2, 25:6, 25:7, 25:12, 25:13, 25:16, 25:17, 25:21, 25:22, 25:25, 26:1, 26:6, 26:7, 26:11, 26:12, 26:14, 26:15, 26:19, 26:20, 26:22, 26:23, 27:2, 27:3, 27:14, 27:15, 27:17, 27:18, 28:3, 28:8, 28:11, 28:12, 29:23, 29:24, 31:11, 31:12, 31:14, 31:15, 31:16, 31:17, 34:12, 34:13, 34:21, 34:22, 35:20, 35:21, 36:4, 36:5, 36:11, 36:12, 36:21, 36:22, 37:15, 37:16, 38:5, 38:6, 38:12, 38:13, 39:4, 39:5, 39:21,

39:22, 40:6, 40:7, 40:17, 40:18, 40:24, 40:25, 41:8, 41:9, 41:13, 41:14, 41:22, 41:23, 42:4, 42:5, 42:10, 42:11, 42:24, 42:25, 43:25, 44:1, 44:21, 44:22, 45:5, 45:6, 45:12, 45:14, 45:15, 45:25, 46:1, 46:10, 46:12, 46:13, 46:25, 47:1, 47:8, 47:9, 48:1, 48:2, 48:10, 48:11, 49:18, 49:19, 49:24, 49:25, 50:2, 50:3, 50:5, 50:6, 50:14, 50:15, 51:3, 51:4, 51:11, 51:21, 51:22, 52:1, 52:2, 53:1, 53:2, 53:4, 53:5, 53:10, 53:11, 54:5, 54:6, 54:15, 54:16, 54:22, 54:23, 55:11, 55:12, 55:20, 55:22, 55:23, 55:24, 56:5, 56:6, 56:15, 56:16, 56:18, 56:19, 56:22, 56:23, 57:1, 57:2, 57:5, 57:6, 57:9, 57:10, 57:12, 57:13, 57:16, 57:17, 57:19, 57:20, 57:23, 57:24, 58:11, 58:12, 58:14, 58:16, 58:18, 58:22, 58:25, 59:2, 59:17, 59:19, 60:13, 61:20, 61:22, 62:3, 62:7, 62:11, 62:13, 62:23, 63:3, 63:5, 63:18, 63:20, 63:25, 64:3, 64:9, 64:11, 64:12, 64:16, 64:24, 64:25, 65:7, 65:9, 65:11, 65:12, 65:15, 65:19, 65:22, 65:25, 66:2, 66:4, 66:6, 66:8, 66:18, 66:24, 67:2, 67:5, 67:7, 67:8, 67:9, 67:10, 67:12, 67:13, 67:14, 68:7, 68:11, 68:14, 68:15, 68:18, 68:23, 69:1, 69:3, 69:10, 69:21, 69:24, 70:1, 70:2, 70:4, 70:5, 70:13, 70:14, 70:15, 70:18, 70:25, 71:2

**theirs** [1] - 36:16

**then-wife** [2] - 21:6, 24:24

**there'll** [1] - 64:20

**therefore** [1] - 58:4

**thereof** [1] - 22:25
**they've** [4] - 31:3, 35:25, 52:2, 52:5
**thinking** [1] - 66:17
**thinks** [1] - 55:14
**third** [2] - 23:5, 39:10
**threatened** [1] - 56:16
**three** [3] - 14:25, 32:14, 59:6
**throat** [1] - 41:15
**Thursday** [1] - 68:20
**tie** [1] - 19:22, 22:21
**tied** [1] - 19:24
**timeframe** [1] - 61:6
**Title** [1] - 50:6
**today** [5] - 7:11, 47:13, 49:21, 54:3, 57:25
**Tom** [1] - 3:8
**top** [2] - 26:1, 32:25
**total** [2] - 22:9, 22:10
**totally** [1] - 33:21, 37:2, 37:3
**totals** [1] - 26:9
**towards** [2] - 50:21, 52:13
**traffic** [1] - 65:1
**train** [1] - 59:16
**transcript** [2] - 72:5, 72:6
**TRANSCRIPT** [1] - 1:10
**travel** [20] - 59:5, 59:11, 59:14, 59:21, 60:17, 60:22, 61:18, 61:20, 62:5, 62:12, 62:13, 62:20, 63:6, 63:11, 65:3, 65:4, 65:5, 65:18, 66:3
**traveling** [3] - 60:2, 60:24, 61:8
**treatment** [1] - 11:10
**trial** [17] - 5:16, 11:24, 12:21, 13:7, 13:10, 13:11, 13:18, 14:3, 14:19, 14:23, 18:16, 18:21, 19:1, 47:1, 66:14, 66:15, 69:16
**trials** [3] - 44:18, 66:24, 68:8
**tried** [3] - 45:17, 46:4, 46:9
**true** [2] - 72:4, 72:5
**truthfully** [4] - 8:24, 43:3, 43:13, 44:17
**try** [1] - 32:1
**trying** [4] - 15:11, 19:3, 48:16, 66:15

**turn** [1] - 40:14
**turns** [3] - 40:20, 46:17, 50:9
**two** [6] - 7:3, 15:21, 27:4, 29:1, 32:10, 33:19
**type** [3] - 11:11, 32:18, 33:19

## U

**U.S** [9] - 1:15, 23:21, 34:2, 43:3, 53:7, 54:24, 55:25, 56:3, 69:19
**unable** [1] - 18:7
**unconstitutional** [4] - 15:21, 16:2, 16:9, 18:1
**under** [16] - 8:23, 17:7, 33:8, 34:25, 38:9, 39:8, 40:1, 48:14, 49:16, 50:6, 53:14, 53:19, 55:4, 62:12, 67:23
**underpayment** [2] - 21:14, 25:14
**underreport** [1] - 27:7
**understood** [1] - 6:22
**uniformity** [1] - 32:1
**united** [1] - 2:3
**UNITED** [4] - 1:1, 1:3, 1:11, 1:18
**United** [12] - 3:2, 3:6, 20:4, 20:5, 20:15, 20:17, 20:22, 24:6, 60:17, 65:18, 65:20, 72:13
**unknown** [1] - 39:14
**unlawful** [7] - 17:5, 17:6, 18:1, 26:13, 27:16, 28:21, 28:24
**unless** [6] - 14:15, 34:18, 35:6, 49:4, 62:19, 66:21
**unredacted** [2] - 3:25, 4:4
**unreported** [3] - 22:9, 26:2, 26:8
**unusual** [1] - 8:14
**up** [36] - 7:11, 7:18, 8:16, 8:18, 12:3, 12:18, 13:17, 15:7, 15:17, 15:24, 16:5, 16:22, 17:10, 18:15, 18:21, 19:14, 19:16, 30:12, 31:18, 33:7,

35:7, 37:9, 41:3, 41:20, 42:22, 44:13, 47:14, 47:15, 49:1, 50:9, 53:17, 55:15, 55:16, 64:5, 64:7, 64:13
**updated** [1] - 50:8
**Upstate** [1] - 59:9, 61:7, 62:1
**upward** [1] - 33:9, 40:3
**USC** [1] - 9:6
**useful** [2] - 33:22, 69:11

## V

**vacated** [2] - 46:18, 46:20
**valuable** [1] - 37:18
**variance** [4] - 34:24, 35:6, 35:7
**various** [3] - 30:7, 59:21, 63:7
**vehicles** [1] - 48:24
**venue** [6] - 19:12, 27:25, 28:5, 45:16, 45:22, 46:6
**version** [1] - 3:25
**versions** [1] - 5:13
**versus** [1] - 3:2
**VIA** [1] - 1:10
**via** [1] - 20:21
**video** [2] - 4:12, 45:12
**view** [2] - 33:5, 43:6
**viewed** [1] - 44:24
**views** [1] - 44:19
**violate** [1] - 27:15
**violated** [2] - 29:7, 29:11
**violation** [3] - 9:6, 23:6, 70:8
**violent** [1] - 39:1
**void** [1] - 46:19
**voluntarily** [3] - 6:17, 57:11, 58:2
**voluntariness** [2] - 8:21, 56:7
**voluntary** [2] - 23:6, 27:12
**vote** [1] - 37:19
**vs** [1] - 1:5

## W

**waive** [13] - 5:4, 6:2, 6:5, 12:4, 15:16,

16:22, 19:12, 27:24, 28:2, 28:7, 29:25, 46:6
**waiver** [7] - 5:14, 5:16, 15:17, 15:23, 19:10, 46:14, 69:15
**waivers** [1] - 45:15
**wants** [2] - 60:16, 69:5
**warrant** [1] - 42:20, 70:9
**warranted** [1] - 40:4
**Washington** [11] - 1:6, 1:16, 1:20, 2:5, 59:14, 59:22, 60:6, 60:7, 60:10, 62:5, 72:14
**watch** [1] - 36:24
**water** [1] - 41:14
**ways** [1] - 48:13
**weapons** [1] - 62:17
**wearing** [1] - 41:15
**Wednesday** [1] - 68:20
**week** [6] - 61:9, 66:13, 66:22, 68:8, 68:9, 68:19
**weeks** [1] - 7:3
**whichever** [1] - 20:1
**wife** [3] - 21:6, 24:24, 67:11
**willfully** [1] - 22:12
**willfulness** [2] - 23:5, 27:12
**willing** [4] - 4:12, 7:17, 12:3, 12:17
**wire** [2] - 20:21, 24:5
**wired** [1] - 52:19
**wish** [2] - 6:10, 6:18
**withdraw** [7] - 39:13, 41:24, 42:5, 43:21, 45:1, 53:20, 54:19
**withdrawn** [1] - 47:15
**witness** [1] - 69:14
**witnesses** [2] - 13:20, 13:23
**words** [12] - 13:24, 15:24, 29:2, 29:18, 42:7, 42:19, 46:18, 49:5, 50:17, 58:17, 61:1, 67:14
**works** [2] - 40:12, 68:24
**writ** [1] - 48:18
**writing** [2] - 7:7, 7:10

## Y

**year** [7] - 4:7, 10:12, 21:8, 22:4, 22:8, 26:2, 37:10
**years** [22] - 9:5, 9:10, 10:9, 21:2, 21:5, 21:13, 21:14, 21:15, 21:21, 22:13, 24:17, 24:23, 25:11, 25:15, 25:17, 26:10, 26:17, 27:21, 29:1, 37:25, 57:21, 58:6
**yesterday** [1] - 69:19
**York** [30] - 1:24, 3:16, 19:11, 20:4, 20:5, 23:17, 38:25, 45:18, 45:19, 45:21, 45:23, 46:5, 46:6, 46:9, 59:6, 59:7, 59:8, 59:9, 61:1, 61:7, 61:17, 62:1, 62:3, 63:7, 63:24, 64:6, 64:10, 64:14, 65:4
**yourself** [3] - 3:3, 10:2, 14:7

## Z

**ZACHARY** [1] - 1:6
**Zachary** [4] - 3:2, 20:3, 57:20, 58:5
**ZOOM** [1] - 1:10
**Zoom** [5] - 4:17, 66:11, 67:17, 70:12, 70:20